1  RICHARD D. McCUNE (State Bar No. 132124)
   rdm@mccunewright.com
2  DAVID C. WRIGHT (State Bar No. 177468)
   dcw@mccunewright.com
3  JAE (EDDIE) K. KIM (State Bar No. 236805)
   jkk@mccunewright.com
4  McCuneWright LLP
   2068 Orange Tree Lane, Suite 216
5  Redlands, California 92374
   Telephone: (909) 557-1250
6  Facsimile: (909) 557-1275

7  Attorneys for Plaintiff Guy Coss,
   and the putative class

8

9              UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  GUY COSS, on behalf of himself and )   Case No.:  2:15-cv-00974
    all others similarly situated,         )
13                                          )   **CLASS ACTION COMPLAINT**
                                            )
14            Plaintiff,                    )
                                            )   **1. VIOLATION OF MAGNUSON-
15        v.                                )      MOSS WARRANTY ACT (15 U.S.C.
                                            )      § 2301, *et seq.*)**
16  HYUNDAI MOTOR AMERICA;                  )
    and DOES 1 through 10, inclusive,       )   **2. VIOLATION OF CALIFORNIA
17                                          )      UNFAIR COMPETITION LAW
            Defendants.                     )      (California Business & Professions
18                                          )      Code §§ 17200, *et seq.*)**
                                            )
19                                          )   **3. VIOLATION OF CALIFORNIA
                                            )      FALSE ADVERTISING LAW
20                                          )      (California Business & Professions
                                            )      Code §§ 17500, *et seq.*)**
21                                          )
                                            )   **4. VIOLATION OF CALIFORNIA
22                                          )      CONSUMER LEGAL REMEDIES
                                            )      ACT (Civil Code § 1750 *et seq.*)**
23                                          )
                                            )   **5. BREACH OF THE IMPLIED
24                                          )      WARRANTY OF
                                            )      MERCHANTABILITY (California
25                                          )      Commercial Code § 2314)**
                                            )
26                                          )   **6. BREACH OF CONTRACT /
                                            )      COMMON LAW WARRANTY
27                                          )      (Based on California Law)**
                                            )
28                                          )   **7. FRAUD BY CONCEALMENT (Based
                                            )      on California Law)**

                            -1-

|  |  |
|--|--|
| ) | **8. NEGLIGENT MISREPRESENTATION (Based on California Law)** |
| ) | **9. VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES (California Civil Code §§ 1791.2 and 1973.2(D))** |
| ) | **10. VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (California Civil Code §§ 1791.1 and 1792)** |
| ) | **11. DECEIT (California Civil Code § 1710)** |
| ) | **DEMAND FOR JURY TRIAL** |

Plaintiff Guy Coss, an individual, on behalf of himself and on behalf of all others similarly situated (*i.e.*, the members of the Plaintiff Class described and defined within this Complaint), herein alleges as follows:

# I

# OVERVIEW

1.      This is a civil action challenging the unlawful scheme engaged in by Defendant Hyundai Motor America (hereinafter "Defendant" or "Hyundai") in the selling and continued servicing of its telematics remote monitoring feature, "Blue Link Telematics System."  The term "telematics" refers to the branch of information technology that deals with the long-distance transmission of computerized information. The term has evolved to refer to automobile systems that combine global position satellite tracking and other wireless communications for automatic roadside assistance and remote diagnostics, first popularized by General Motors Corporation with its OnStar system.

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

2.     Beginning in 2011, Hyundai introduced the Hyundai Blue Link Telematics System in certain models of its 2012 model year line-up, including the popular Hyundai Sonata.  According to Hyundai, the Blue Link system "uses an enhanced cellular network, with automatic roaming, that optimizes connections and prioritizes emergency requests."  With Blue Link, Hyundai customers get automatic emergency assistance in the event of a collision, point-of-interest search and navigation assistance, the ability to remotely operate various vehicle features, and self-diagnostic vehicle reports.  Though Hyundai owners must subscribe in order to receive the benefits of the Blue Link system, all necessary hardware for the Blue Link system is a "standard feature" included in the sale price of Blue Link equipped Hyundai vehicles.

3.     Purchasers of Blue Link equipped Hyundai vehicles were provided with a trial subscription period ranging from 3 months to one year free of charge.  Following the expiration of the free trial period, Hyundai owners had the option to pay for continued Blue Link subscription service or to pay nothing and allow the Blue Link subscription service to lapse.  If Hyundai owners either did not subscribe to Blue Link or thereafter allowed their subscription to lapse, Hyundai provided a telephone number that the vehicle owner, or any subsequent owner of that vehicle, could call in order to reactivate the Blue Link service for a "nominal connection fee."

4.     At no time from 2011 through the end of 2014, did Hyundai inform purchasers of its Blue Link equipped vehicles that if owners did not subscribe to the Blue Link subscription service, the Blue Link Telematics hardware would be rendered non-functional and would require replacement at the customer's expense if they, or a subsequent owner of the vehicle, desired to reactivate the Blue Link subscription service at a later time.

5.     Nevertheless, on or about January 7, 2015, Hyundai notified owners of its Blue Link equipped vehicles whose Blue Link subscription services had been inactive for more than one year, that "**If you do not reactivate your Blue Link services by January 15, 2015, your current Blue Link system in your vehicle will be permanently**

**disabled.**"  In the same notice, Hyundai informed said owners that "[reactivating your Blue Link services after it is disabled will require a hardware change, dealer-assisted installation, and will cost a minimum of $500 to replace the telematics unit plus any applicable subscription fees."

6.     In threatening to permanently disable the Blue Link Telematics hardware, Hyundai forced owners of its Blue Link equipped vehicles to choose between: a) subscribing to the Blue Link service, that they previously had been informed was optional; or b) allowing the Blue Link Telematics hardware that they had purchased with their vehicles to be rendered non-functional, thereby devaluing their vehicles, and requiring a significant additional expense in the event they, or any subsequent owner, desired to avail themselves of the Blue Link subscription service.

7.     This action by Hyundai constitutes a direct breach of the contract terms of the sale of Blue Link equipped Hyundai vehicle as provided for in the Monroney Sticker affixed to such vehicles which included as a "**STANDARD FEATURE**" the "**Hyundai Blue LinkTM Telematics System.**"  It also constitutes a breach Hyundai's representation to owners, as set forth in Hyundai's Blue Link Handbook, that if they declined enrollment in the Blue Link subscription service, the Blue Link service could later "be reactivated by the owner or subsequent owners" for "a nominal reconnection fee."

8.     Defendant Hyundai made numerous material misrepresentations with regard to the Blue Link Telematics System, including that purchasers of Hyundai vehicles equipped with the Blue Link Telematics System were receiving functioning Blue Link Telematics System hardware that would continue to be functional for the life of the vehicle and that owners could reactivate the Blue Link subscription service at any time for a nominal reactivation fee.

9.     Defendant Hyundai also failed to disclose and/or concealed material facts regarding the Blue Link Telematics System, including the fact that the Blue Link Telematics System would be rendered inoperable if Hyundai owners opted not to enroll

-4-

in the Blue Link subscription service.  As set forth in more detail below, Plaintiff alleges that Defendant Hyundai failed to disclose this fact even after it had actual knowledge that Blue Link Telematics Systems then being sold would be rendered nonfunctional if vehicle owners did not enroll in the Blue Link subscription service.

10.     Plaintiff Guy Coss owns a 2012 Hyundai Sonata Hybrid that he purchased from the Hyundai of Seattle dealership in the state of Washington, on February 8, 2012. As part of this purchase, Hyundai marketed, represented, and warranted that the vehicle was equipped with the Blue Link Telematics System.

11.     Following the expiration of the free trial period for the Blue Link subscription service, Plaintiff opted to discontinue his enrollment in the Blue Link subscription service which expired on February 9, 2013, believing that he or a subsequent owner of the vehicle could later reactivate the Blue Link subscription service for a nominal reconnection fee.

12.     However, when Plaintiff was notified by Hyundai on January 7, 2015, that the Blue Link Telematics System that was installed in his vehicle would be rendered permanently inoperable if he did not reactivate his Blue Link subscription service, thereby devaluing his vehicle by an amount exceeding $500, Plaintiff was forced to renew the subscription to the Blue Link service that he did not want and did not have value for him, for the sole purpose of preserving the functionality of the Blue Link Telematics System installed in his vehicle.

13.     Plaintiff, for himself and all others similarly situated, brings this action for contractual enforcement and damages, as well as restitution and injunctive relief, including requiring Hyundai to: 1) provide the hardware/reconnection update for a nominal fee (as opposed to more than $500 as it threatens); 2) reimburse customers the replacement and reconnection fees and costs they incurred after Hyundai issued its threatening letter of permanently disabling the feature; 3) reimburse those customers whose vehicles have been devalued by the permanent disabling of the feature and/or install functioning Blue Link Telematics Systems in those vehicles whose Blue Link

Telematics Systems have been rendered nonfunctional; 4) send customers a notification of this change in practice; and 5) refrain from engaging in this practice in the future.  This action is brought for claims of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation, as well as violation of the Unfair Business Practices Act, California Business & Professions Code § 17200, *et seq.*; False Advertising, California Business & Professions Code § 17500, *et seq.*; Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*; and statutory Deceit, California Civil Code § 1710.

## II

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiff and other putative class members are citizens of a different state than Defendant.

15.     This Court has personal jurisdiction over Plaintiff because Plaintiff COSS submits to the Court's jurisdiction.  This Court has personal jurisdiction over Defendant Hyundai because Defendant is headquartered in the District, has conducted and continues to conduct substantial business in the District, and because Defendant has committed the acts and omissions complained of herein in the District.

16.     Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391 because Defendant Hyundai Motor America is headquartered in Fountain Valley, California, within the District, sells a substantial amount of automobiles in this district, has dealerships in this district, and many of Defendant's acts complained of herein occurred within this district.

//
//
//
//

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

# III
# PARTIES

17.     Plaintiff Guy Coss is a resident and citizen of Shoreline, Washington. Plaintiff owns a 2012 Hyundai Sonata Hybrid which he purchased from Hyundai of Seattle on February 8, 2012.

18.     Based on information and belief, Defendant Hyundai Motor America is a corporation which is incorporated in the state of California, and is a citizen of and has its principal place of business in the city of Fountain Valley, California.

19.     The true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

20.     Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

# IV
# FACTUAL ALLEGATIONS

## A.     Plaintiff Guy Coss's Purchase of a Blue Link Equipped Hyundai Vehicle

21.     Plaintiff Guy Coss purchased a new 2012 Sonata Hybrid on or about February 8, 2012, at Hyundai of Seattle, in Seattle, Washington.  As part of his decision to make this purchase, Plaintiff was shown marketing materials touting the Blue Link Telematics System as being a standard feature in his vehicle and relied on this

-7-

representation when he decided to purchase the vehicle.  Included in the purchase of the vehicle, as listed by the Monroney Sticker, was "**Hyundai Blue LinkTM Telematics System (90 –Day Free Trial)** – Technology that enables the driver to stay connected via In-Car Web or Smartphone App; Subscription Required."  Based on these representations, Plaintiff reasonably understood that the Blue Link feature would be a permanent fixture of his vehicle, similar to all of the other features listed on the Monroney Sticker, regardless of whether he renewed the Blue Link subscription service after the promotional free service period.

22.    Other than mention of the subscription fee for the service, there was no notification at the time of purchase that Defendant would later cause the Blue Link Telematics System hardware to be rendered permanently inoperable if he opted not to enroll in the optional Blue Link subscription service.  Plaintiff was not notified that if he failed to enroll in the Blue Link subscription service, he would incur a fee in excess of $500 and be required to replace the Blue Link Telematics System hardware in order to reconnect to the service at a later time.

23.    At the time of his purchase of the vehicle, Plaintiff was informed, and availed himself, of the free trial subscription period for Blue Link service and, in fact, enrolled in the auto-renewal program by providing his credit card information in order to take advantage of Hyundai's promotional offer of doubling the length of the free trial subscription period when auto-renewal was selected during the enrollment process.  Because Plaintiff did not find the Blue Link System had value equal to the subscription price, following the free trial period he cancelled the subscription service.

**B.    Defendant Hyundai's Threat to Render the Blue Link Telematics Nonfunctional If Owners Did Not Enroll in the Subscription Service**

24.    On or about January 7, 2015, Plaintiff received an email from Hyundai which threatened that if he did not renew the service by January 15, 2015, for a price of $39 or $99, then "your current Blue Link system in your vehicle will be permanently disabled," and "[r]eactivating your Blue Link services after it is disabled will require a

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

hardware change, dealer-assisted installation, and will cost a minimum of $500 to replace the telematics unit plus any applicable subscription fees."  (Email from Hyundai Blue Link to Guy Coss, 1/17/2015, Ex. A.)  The explanation provided was that, "[s]ince your Blue Link Services have been inactive for more than a year, the mobile phone number in your vehicle's telematics hardware must be turned off and returned to the carrier for commercial use."

25.    This was never a term of the original purchase agreement or disclosed at the time of purchase, and ran contrary to Plaintiff's reasonable expectations that the Blue Link Telematics System was included as a permanent standard feature of the vehicle and could be reconnected at any time for a nominal fee.  Furthermore, the "minimum of $500" cost to replace the Blue Link Telematics System hardware is contrary to Hyundai's sales script which states that customers are to be notified that only a "nominal reconnection fee will apply" for reactivating the Blue Link service.

26.    As a result of this threatening letter, Plaintiff was forced to pay the $39 fee to renew a subscription to the Blue Link service solely to prevent the normal resale value of his vehicle from being substantially harmed by the permanent disabling of the Blue Link Telematics System.

27.    By acting in such a way as to render the Blue Link Telematics System nonfunctional, Hyundai breached its agreement that the Blue Link system was a standard permanent feature included in the purchase of his vehicle.

28.    Had Plaintiff known at the time of purchase that the Blue Link feature would be rendered inoperable by Hyundai, or would require more than $500 in fees to reactivate the system in order to avoid a loss in value of the vehicle by that amount, then he would have considered buying other competitive vehicle manufacturers' models which do have a telematics feature as a permanent fixture in the vehicle or would not have been willing to pay as much as he had for this vehicle.

29.    To the extent that Hyundai attempted to reserve discretion in implementing its obligations regarding the Blue Link service as a standard feature included in his

purchase of the vehicle, Plaintiff reasonably did not expect that Hyundai would exercise any such discretion to subsequently render the Blue Link Telematics System hardware permanently inoperable or use the threat of rendering such hardware inoperable, substantially diminishing the value of the vehicle, to force him to renew subscriptions to the Blue Link service.

30.     Therefore, Plaintiff has been damaged as a result of Hyundai's practice.

**C.     Defendant Hyundai's Entry into Vehicle Telematics**

31.     Hyundai is one of the largest auto-manufacturers in the world, and designs, manufactures, advertises, and sells numerous well-known brands.  In 2011, in an attempt to capitalize on the most lucrative new component in automobile sales, vehicle telematics, a market that had been dominated for two decades by General Motor's subsidiary OnStar, Hyundai developed, marketed, and sold its own telematics system, called "Blue Link" as a standard feature in selected 2012 model year vehicles.

32.     GM pioneered the telematics industry when it began including its OnStar telematics system in General Motors vehicles in 1996.  Since then, GM's OnStar telematics unit has "quietly become a profit margin superstar" or "financial superstar with GM," with revenues estimated at about $1.5 billion annually and a profit margin of 30-35 percent, a margin which far exceeds the profit margin of selling the vehicles themselves. There are about 6 million active OnStar users in North America.[1]

33.     The popularity of OnStar equipped vehicles eventually attracted competitors.[2]  The profit potential experienced by GM's OnStar explains why auto manufacturers are pouring billions of dollars into developing connected cars, according to

---

[1] http://www.autonews.com/article/20130527/OEM/305279958/not-satisfied-with-onstars-steady-profits-gm-wants-to-create-a-global-
http://www.bloomberg.com/bw/articles/2013-05-30/onstar-gms-surprisingly-strong-toehold-in-the-tech-world
[2] http://www.nytimes.com/2010/04/25/automobiles/25STAR.html?pagewanted=all&_r=0

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

a January 2014 study conducted by the Center of Automotive Research.[3]  Auto manufacturers have always looked for ways to entice customers to purchase their vehicles, including competition for the greatest horsepower and, when gas prices experienced significant increases, a competition for the best gas mileage.  But as technology develops and consumers increasingly value the ability to be "connected," auto manufacturers have responded by marketing the connectedness of their vehicles and providing services similar to GM's OnStar.[4]  Mercedes has Mbrace, BMW offers BMW Assist, Lexus has Enform, and Ford has Sync.

34.     As a result, connected cars are becoming the best-selling models on dealer lots.  In-vehicle technology is the top selling point for 39 percent of car buyers today – more than twice the 14 percent who say their first consideration is traditional performance measures such as power and speed, according to a study by the consulting firm Accenture released in late 2013.  Consumers are increasingly looking for solutions that allow them to stay connected to their digital lives wherever they are.  As the difference between first and worst in auto quality has narrowed, the connected car is becoming the next frontier in how automakers distinguish themselves.[5]

35.     Therefore, to be competitive today, most car manufacturers include telematics either as a standard or optional feature.  Most telematics systems initially were available only in high-end luxury models, but they are now offered as a standard feature on nearly all vehicle models.  While OnStar is the clear leader worldwide, the marketing firm ABI research predicts that over 90 percent of all new vehicles will offer telematics by 2016.[6]  The telematics systems featured in cars are the primary component of the fast-

---

[3] http://www.autonews.com/article/20140110/OEM06/301109910/the-race-to-market-the-connected-car

[4] http://wot.motortrend.com/hyundai-blue-link-pricing-features-released-85835.html

[5] http://www.autonews.com/article/20140110/OEM06/301109910/the-race-to-market-the-connected-car

[6] http://electronicdesign.com/communications/telematics-connect-your-car-world

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

1   growing market referred to as the "connected car."  In 2013, the connected car market
2   was expected to see revenue of nearly $22 billion.[7]

3       36.    The launch of Hyundai's Blue Link Telematics System demonstrated that it
4   was joining other auto manufacturers in attempting to be more than just a car company,
5   but to deliver a package of goods, which ultimately means higher profits.  New car sales
6   can be profitable, but it is the add-ons like the subscription services that accompany
7   vehicle telematics systems that are where vehicle companies can make big profits.[8]

8       37.    In an attempt to compete with OnStar, Hyundai set the price of it Blue Link
9   subscription packages at just below the price of comparable OnStar packages.[9]

10      38.    Blue Link was marketed and sold as a standard feature in the following
11  models (hereinafter the "Class Vehicles"):

12      • 2012 Azera
13      • 2012 Sonata
14      • 2012 Sonata Hybrid
15      • 2012 Veloster
16      • 2013 Azera
17      • 2013 Elantra GT
18      • 2013 Genesis
19      • 2013 Genesis Coupe
20      • 2013 Santa Fe
21      • 2013 Santa Fe Sport
22      • 2013 Sonata

23  _____

24  [7] http://www.eweek.com/mobile/google-deals-with-hyundai-kia-move-connected-car-
25  market-forward#sthash.27TdseZE.dpuf
26  [8] http://www.examiner.com/article/hyundai-launches-all-new-blue-link-telematics-
27  platform
    [9] http://content.usatoday.com/communities/driveon/post/2011/06/hyundai-blue-link-gm-
28  general-motors-onstar/1#.VMgtvbMtFaQ; http://wot.motortrend.com/hyundai-blue-link-
    pricing-features-released-85835.html

-12-

- 2013 Sonata Hybrid
- 2013 Veloster
- 2014 Azera
- 2014 Elantra
- 2014 Elantra Coupe
- 2014 Elantra GT
- 2014 Equus
- 2014 Genesis
- 2014 Genesis Coupe
- 2014 Santa Fe
- 2014 Santa Fe Sport
- 2014 Sonata
- 2014 Sonata Hybrid
- 2014 Tucson
- 2014 Veloster
- 2015 Elantra
- 2015 Equus
- 2015 Genesis
- 2015 Genesis Coupe
- 2015 Sonata
- 2015 Sonata Hybrid
- 2015 Tucson
- 2015 Veloster

**D.   Defendant Hyundai's Campaign to Increase Blue Link Subscription Service Enrollment**

39.     GM and all other auto manufacturers selling vehicles connected with telematics have a strong financial incentive to attempt to convert more new vehicle purchasers into continued subscribers.  Analysts estimate that OnStar converts about half

-13-

of new-car buyers to subscribers, while the feature becomes profitable at about a 30% retention rate.[10]

40.     The dominant way that auto manufacturers monetize telematics follows the formula of smart phones – through a service profit model.   The hardware and free trial are included as part of the vehicle purchase – typically 6-12 months for services – and then a monthly or annual subscription fee is charged.  GM OnStar, Mercedes-Benz Mbrace, and Hyundai Blue Link are among others who have adopted this model. Therefore, having subscribers pay for continued subscription for telematics services is paramount to achieving high profit margins.[11]

41.     In order to increase renewal rates, some auto manufacturers, including Hyundai, include terms in signing customers up for the free trial period that the subscription to the telematics service will be automatically renewed unless it is canceled. The Blue Link Terms and Conditions state that "[u]pon the expiration of the applicable trial period(s) for your Service plan, if we have a valid form of payment on file for you, we will automatically charge your account for the applicable service fees according to the payment schedule associated with your Service Plan and payment is due in advance." Hyundai makes no mention of permanently disabling the telematics hardware unit or that in addition to paying for reactivation, a customer would also have to pay to replace inoperable hardware, or that the cost of replacing the unit would exceed $500.

42.     Beginning in early 2015, Hyundai engaged in an even more aggressive way to induce customers to pay for renewals of their subscriptions.  In or about January 2015, Hyundai began disseminating notices by email and other means threatening that if vehicle owners whose Blue Link Telematics System subscription service had been inactive for more than one year did not renew the service by January 15, 2015, then "your current Blue Link system in your vehicle will be permanently disabled," and defining what it

---

[10] http://www.autonews.com/article/20130527/OEM/305279958/not-satisfied-with-onstars-steady-profits-gm-wants-to-create-a-global-

[11] http://www.trajectorygroup.com/blog/what-business-model-telematics-viewpoint

meant by "permanently disabled" by stating in a footnote that "[r]eactivating your Blue Link services after it is disabled will require a hardware change, dealer-assisted installation, and will cost a minimum of $500 to replace the telematics unit plus any applicable subscription fees." Furthermore, the "minimum of $500" cost to replace the Blue Link telematics unit is contrary to Hyundai's sales script which states that customers are to be notified that only a "nominal reconnection fee will apply" for reactivating the Blue Link service at a later time.

**E.   Hyundai's Practice of Rendering the Blue Link Telematics System Hardware Inoperable Substantially Harms Consumers**

43.     The cost to customers as a result of Hyundai's practice of permanently disabling the Blue Link Telematics System hardware if they do not pay to renew their Blue Link subscription service unfairly places vehicles owners in the position of either having to pay for a subscription service that does not have value equal to the subscription price or to have the Blue Link Telematics System hardware be rendered inoperable, thus reducing the value of the car.

44.     The substantial value of the Blue Link Telematics System hardware is illustrated by the listing of the 2014 Hyundai Sonatas in the Kelly Blue Book, which states under "Notable Equipment - Standard Equipment": "Hyundai is renowned for outfitting its vehicles with a comprehensive serving of standard features, and the 2014 Sonata is no exception. Topping the list is Hyundai's Blue Link infotainment and concierge service."[12]

45.     Therefore, all Class Members have been injured and are entitled to damages, restitution, and/or injunctive relief for Hyundai's practice of requiring paid subscription renewals to avoid the permanent disabling of the telematics hardware, instead of voluntarily upgrading the hardware units for free or just a nominal fee for all Subject

---

[12] http://www.kbb.com/hyundai/sonata/2014-hyundai-sonata/?r=71746288644224720

-15-

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

1    Vehicles, has or will imminently result in substantial loss in value of the vehicle the

2    moment the subscription is canceled and/or the vehicle is sold.

3    **F.      Despite Express Warranties, Hyundai Refuses to Replace Blue Link**

4    **Telematics Systems That Are or Will Become Permanently Disabled**

5           46.     In connection with the sale (by purchase or lease) of each one of its new

6    vehicles, Hyundai provides an express limited warranty on each vehicle.  In those

7    warranties, Hyundai promises to repair any defect or malfunction that arises in the

8    vehicle during a defined period of time.  This warranty is provided by Hyundai to the

9    vehicle owner in writing and regardless of what state the customer purchased his or her

10   vehicle in.  Hyundai also issues a separate warranty for each model year, although all of

11   the terms of the warranty are largely similar from year to year.  As further alleged below,

12   the relevant terms of the warranties in this case are identical, regardless of the model year

13   of the Class Vehicles.

14          47.     Plaintiff was provided with a warranty and it was a basis of his purchase of

15   the vehicle.

16          48.     In its Limited Warranty and in advertisements, brochures, and through other

17   statements in the media, Hyundai expressly warranted that it would repair or replace

18   defects in material or workmanship free of charge if they became apparent during the

19   warranty period.  The following uniform language appears in Hyundai's Owner's

20   Handbook and Warranty Information:

21          HYUNDAI NEW VEHICLE LIMITED WARRANTY

22          WHAT IS COVERED

23          Repair or replacement of any component originally

24          manufactured or installed by Hyundai Motor Company, Hyundai

25          Motor Group, Hyundai Motor Manufacturing Alabama

26          (HMMA), Kia Motors Manufacturing Georgia (KMMG) or

27          Hyundai Motor America (HMA) that is found to be in defective

28          material or workmanship under normal use and maintenance,

-16-

1   except any item specifically referred to in the section "What is

2   Not Covered." . . . Repairs will be made using new Hyundai

3   Genuine Parts or Hyundai authorized manufactured parts.

4   WARRANTY PERIOD

5   The warranty period is limited to 5 years from the date of

6   original retail delivery or date of first use, or 60.000 miles,

7   whichever occurs first.

8   49.    Plaintiffs and the Class Members experienced defects within the warranty

9   period.  However, despite the existence of the express warranties provided to Plaintiff

10  and Class Members, Hyundai has failed to honor the terms of the warranties by failing to

11  "[r]epair or replace[] any component originally manufactured or installed by Hyundai

12  Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama

13  (HMMA), Kia Motors Manufacturing Georgia (KMMG) or Hyundai Motor America

14  (HMA) that is found to be in defective material or workmanship under normal use and

15  maintenance."

16                                    **IV**

17                    **CLASS ACTION ALLEGATIONS**

18  50.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

19  Procedure 23(a), (b)(2), and (b)(3) on behalf of the following classes:

20      •   All persons or entities in the United States who are current or former

21          owners and/or lessees of a Hyundai vehicle equipped with the Hyundai

22          Blue Link Telematics System (the "Nationwide Class").

23      •   All persons or entities who purchased and/or leased Hyundai vehicle

24          equipped with the Hyundai Blue Link Telematics System (the "California

25          Class").

26  51.    Excluded from the above class are Defendant, its employees, co-

27  conspirators, officers, directors, legal representatives, heirs, successors and wholly or

28  partly own subsidiaries or affiliated companies; class counsel and their employees; and

-17-

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

1   the judicial officers and their immediate family members and associated court staff

2   assigned to this case, and all persons within the third degree of relationship to any such

3   persons.

4         52.    Certification of Plaintiff's claims for class-wide treatment is appropriate

5   because Plaintiff can prove the elements of their claims on a class-wide basis using the

6   same evidence as would be used to prove those elements in individual actions alleging

7   the same claim.

8         53.    This action has been brought and may be properly maintained on behalf of

9   each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

10        54.    **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The

11  members of the Class are so numerous that their individual joinder is impracticable.

12  Plaintiff is informed and believes that there are hundreds of thousands purchasers in the

13  class.  Inasmuch as the class members may be identified through business records

14  regularly maintained by Defendant and its employees and agents, and through the media,

15  the number and identities of class members can be ascertained.  Members of the Class

16  can be notified of the pending action by e-mail, mail, and supplemented by published

17  notice, if necessary.

18        55.    **Commonality and Predominance (Federal Rule of Civil Procedure**

19  **23(a)(2)** – There are questions of law and fact common to the Class.  These questions

20  predominate over any questions affecting only individual class members.  These common

21  legal and factual issues include, but are not limited to:

           a.  Whether Hyundai engaged in the conduct alleged herein;

           b.  Whether Hyundai designed, advertised, marketed, distributed, leased,
               sold, or otherwise placed Class Vehicles into the stream of commerce in
               the United States;

           c.  Whether Hyundai caused the Blue Link Telematics System to be
               permanently disabled in vehicles whose owners did not subscribe to the
               Blue Link service;

d.   Whether Hyundai was responsible for the phone number in Hyundai vehicles' telematics hardware being turned off;

e.   Whether Hyundai knew or should have known that the defects that existed with regard to the Hyundai Blue Link Telematics System would lead to the permanent disabling of that system in the Class Vehicles;

f.   Whether Hyundai knew or reasonably should have known of the Hyundai Blue Link Telematics System defects in the Class Vehicles before it sold or leased them to Class members;

g.   Whether Hyundai misrepresented to purchasers of its Blue Link equipped vehicles that the Blue Link service could be reactivated at a later time for a nominal fee;

h.   Whether Hyundai required the owners of Hyundai vehicles in which the Blue Link Telematics System hardware had been permanently disabled to pay for the replacement of such hardware in order to reactivate the Blue Link subscription service;

i.   Whether Hyundai breached the express terms of its contracts with purchasers when it included the Blue Link Telematics System as a standard feature on its automobiles at the time of sale but later caused such Blue Link Telematics Systems to be rendered permanently inoperable?

j.   Whether Hyundai breached the covenant of good faith and fair dealing by including the Blue Link Telematics System as a standard feature on its automobiles at the time of sale but later causing such Blue Link Telematics Systems to be rendered permanently inoperable?

k.   Whether Hyundai willfully concealed from purchasers of its Blue Link Telematics System equipped vehicles that the telematics hardware would be permanently disabled if they failed to enroll in the Blue Link subscription service;

-19-

l.  Whether Hyundai breached its express warranties by including the Blue Link Telematics System as a standard feature on its automobiles at the time of sale but later causing such Blue Link Telematics Systems to be permanently disabled;

m. Whether Hyundai engaged in unfair, unlawful and/or fraudulent business practices under California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, by including the Blue Link Telematics System as a standard feature on the window stickers and in their advertisements at and before the time of sale but later causing such Blue Link Telematics Systems to be rendered permanently disabled;

n.  Whether the same conduct violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*;

o.  Whether Hyundai's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class;

p.  Whether Plaintiff and the other Class members overpaid for their Class Vehicles as a result of the defects alleged herein;

q.  Whether Hyundai was unjustly enriched by its deceptive practices;

r.  Whether Plaintiff and members of the class are entitled to equitable or injunctive relief and, if so, in what amount.

56.  **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – The claims of the representative Plaintiff are typical of the claims of each member of the Class.  Plaintiff, like all other members of the Class, have sustained damages arising from Defendant's violations of the laws, as alleged herein.  The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

57.  **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – The representative Plaintiff will fairly and adequately represent and protect the interests of the Class

members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.  There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate.  Counsel for the Class will vigorously assert the claims of all Class members.

58.   **Superiority (Federal Rule of Civil Procedure 23(b)(3))** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.  Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them.  Even if Class members themselves could afford such individual litigation, the court system could not.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

59.   The Class Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, the Class Plaintiffs would contemplate the use of additional media and/or mailings.

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

60.     This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a.  Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

i.      Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

ii.     Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.  The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c.  Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.      The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii.     The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv.     The difficulties likely to be encountered in the management of a Class Action.

//

CLASS ACTION COMPLAINT
Case No.:  2:15-cv-00974

# V

## VIOLATIONS ALLEGED

61.     Plaintiff alleges the following violations on behalf of both the Nationwide Class and the California Class.

### FIRST CAUSE OF ACTION

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

62.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

63.     Plaintiff and the class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

64.     Hyundai is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

65.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

66.     Title 15, United States Code, section 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

67.     Hyundai's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

68.     Hyundai breached these warranties as described in more detail above.  The Class Vehicles are equipped with the Blue Link Telematics System.  The Class Vehicles share a common defect in that they either have been permanently disabled or will be permanently disabled if the Blue Link subscription service is left inactive for more than one year.

69.     Plaintiff and the other Class Members have had sufficient direct dealings with either Hyundai or its agents (dealerships and technical support) to establish privity

-23-

of contract between Hyundai, on one hand, and Plaintiff and each of the other Class members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Hyundai and its dealers, and specifically, of Hyundai's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

70.     Affording Hyundai a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.  Plaintiff has already done so by contacting Hyundai after being told that his Blue Link Telematics System would be permanently if he did not reactivate his Blue Link subscription service and was told that his only choices were to pay for Blue Link subscription or have to replace the Blue Link Telematics System hardware at his own expense.  Indeed, it is Hyundai that is responsible for the permanent disabling of the Blue Link Telematics System in the first place.  At the time of sale or lease of each Class Vehicle, Hyundai knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Hyundai a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

71.     Plaintiff and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because Hyundai is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Class Vehicles by retaining them.

72.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000,

-24-

1  exclusive of interest and costs, computed on the basis of all claims to be determined in
2  this lawsuit.

3       73.    Plaintiffs, individually and on behalf of the other Class members, seek all
4  damages permitted by law, including diminution in value of the Class Vehicles, in an
5  amount to be proven at trial.

6  **SECOND CAUSE OF ACTION**
7  **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
8  **(California Business & Professions Code §§ 17200, *et seq.*)**

9       74.    Plaintiff incorporates by reference all allegations of the preceding
10  paragraphs as though fully set forth herein.

11       75.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code
12  §§ 17200, *et seq.*, defines unfair business competition to include any "unfair,"
13  "unlawful," or "fraudulent" business act or practice.  The Act also provides for injunctive
14  relief, restitution, and disgorgement of profits for violations.

15       76.    Hyundai's unlawful, unfair, and fraudulent business acts and practices, as
16  described throughout this Complaint, was and is in violation of the UCL.  Hyundai's
17  conduct violates the UCL in the following ways:

18            i.   By knowingly and intentionally concealing from Plaintiff and the
19               other Class Members that the Blue Link Telematics System
20               included as a "standard feature" of their vehicles would be
21               permanently disabled if they did not maintain their enrollment in
22               the Blue Link Subscription Service while obtaining money from
23               Plaintiff and the Class Members;
24          ii.   By marketing the Blue Link Telematics System as being capable of
25               being reactivated for a nominal fee if the Blue Link subscription
26               service was allowed to lapse;
27         iii.   By misrepresenting the reason that the Blue Link Telematics
28               System hardware was permanently disabled;

-25-

iv.  By refusing or otherwise failing to replace the permanently disabled Blue Link Telematics Systems;

v.  By violating federal laws, including the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301; and

vi.  By violating other California laws, including California Civil Code §§ 1709, 1710, 1791.1, 1791.2, 1792, , and 1750, *et seq*., California Commercial Code § 2314, and any other statutes and common law referenced herein.

77.    Hyundai's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain an telematics system that would be permanently disabled if they did not maintain an enrollment in the telematics subscription service and which were not marketed as including such a system.

78.    Defendant's practice is also unfair since it has no utility and, even if it did, any utility is outweighed by the gravity of harm to Plaintiff and the Class members. Defendant's practice is also immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweigh its benefits.

79.    Accordingly, Plaintiff and the Class members have suffered injury in fact, including lost money or property as a result of Hyundai's actions, misrepresentations, and omissions.

80.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Hyundai, under California Business and Professions Code § 17200.

81.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Hyundai from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money Hyundai

acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business and Professions Code § 17203 and California Civil Code § 3345; and for such other relief set forth below.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (California Business & Professions Code §§ 17500, *et seq.*)

82.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

83.    California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

84.    Hyundai caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, including statements on the vehicle Monroney sticker that the Blue Link Telematics System was included as a "standard feature" of their vehicles, and which were known, or which by the exercise of reasonable care should have been known to Hyundai, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

85.    Hyundai has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

86.    Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Hyundai's unfair, unlawful, and/or

deceptive practices.  In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Hyundai with respect to the safety and reliability of the Class Vehicles.  Hyundai's representations turned out not to be true because the Class Vehicles were distributed with Blue link Telematics Systems that Hyundai caused, and is causing, to be permanently disabled rendering certain safety, communication, navigational, and entertainment functions inoperative.  Had Plaintiff and the other Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

87.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Hyundai's business.  Hyundai's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

88.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Hyundai from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Hyundai acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## FOURTH CAUSE OF ACTION

### Violation of California Consumer Legal Remedies Act

### (Civil Code § 1750 *et seq.*)

89.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

90.    California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive

acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

91.   The Class Vehicles are "goods" as defined in California Civil Code § 1761(a).

92.   Plaintiff and the other Class Members are "consumers" as defined in California Civil Code § 1761(d), and Plaintiffs, the other Class Members, and Defendant are "persons" as defined in California Civil Code § 1761(c).

93.   Plaintiff's and each and every Class members' purchase or lease of the subject vehicle constitute a "transaction" as defined by California Civil Code § 1761(e).

94.   As alleged above, Hyundai made numerous representations concerning the benefits and safety features of the Blue Link Telematics System that were misleading.

95.   The acts and practices of Defendant as discussed throughout the Complaint, constitute "unfair or deceptive acts or practices" by Defendant, that are unlawful, as enumerated in section 1770(a) of the California Civil Code, specifically in at least the following CLRA provisions:

      i.   Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

     ii.   Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

   iii.   Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

   iv.   Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

96.   Plaintiff and the other Class members have suffered injury in fact and actual damages resulting from Hyundai's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Class Vehicles.

-29-

97.    Hyundai knew, should have known, or was reckless in not knowing that its Blue Link Telematics System hardware was susceptible to being rendered permanently disabled and, as such, were not were not suitable for their intended use.

98.    The facts concealed and omitted by Hyundai to Plaintiff and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.  Had Plaintiff and the other Class members known about the defective nature of the Class Vehicles and their Blue Link Telematics Systems, they would not have purchased or leased the Class Vehicles or would not have paid the prices they paid in fact.

99.    Such misconduct materially affected the purchasing decisions of Plaintiff and the members of the Classes.

100.    Plaintiff's and the other California Class members' injuries were proximately caused by Hyundai's fraudulent and deceptive business practices.

101.    Plaintiffs seek restitution and injunctive relief pursuant to California Civil Code § 1780.

## FIFTH CAUSE OF ACTION
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (California Commercial Code § 2314)

102.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

103.    Hyundai is and was at all relevant times a merchant with respect to motor vehicles under California Commercial Code § 2104.

104.    A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

105.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles were defective in that they were equipped with Hyundai Blue Telematics Systems that have been, or will be, permanently disables if owners

decline to enroll in the Blue Link subscription service, resulting in certain safety, communication, navigational and entertainment functions inoperative.

106.   Hyundai was fully aware of this issue, as evidenced by the fact that it alerted owners of the Class Vehicles that there Blue Link Telematics System would be permanently disabled if they did not enroll in the Blue Link subscription service.

107.   Plaintiffs and the other Class members have had sufficient direct dealings with either Hyundai or its agents (dealerships) to establish privity of contract between Plaintiff and the other Class members.  Notwithstanding this, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Hyundai and its dealers; specifically, they are the intended beneficiaries of Hyundai's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiff's and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned defects.

108.   As a direct and proximate result of Hyundai's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based on California Law)**

109.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

110.   To the extent Hyundai's limited remedies are deemed not to be warranties under California's Commercial Code, Plaintiff, individually and on behalf of the other Class members, pleads in the alternative under common law warranty and contract law. Hyundai limited the remedies available to Plaintiffs and the other Class members to

repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Hyundai and/or warranted the quality or nature of those services to Plaintiff and the other Class members.

111.   Hyundai breached this warranty or contract obligation by failing to repair or replace the Class Vehicles' Blue Link Telematics Systems that have been, or will become, permanently disabled.  Hyundai further breached its contractual obligation to provide the Blue Link Telematics System as a standard feature on Plaintiff's vehicle by equipping Plaintiff's vehicle with a telematics system that was subject to being permanently disabled within the expected useful life of the vehicle.

112.   The material terms of the contract also included the implied covenant of good faith and fair dealing, whereby Hyundai covenanted that they would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.  To the extent that Hyundai attempted to reserve discretion in implementing its obligations regarding the Blue Link service as a standard feature included in his purchase of the vehicle, Plaintiff reasonably did not expect that Hyundai would exercise any such discretion to subsequently render the Blue Link Telematics System hardware permanently inoperable or use the threat of rendering such hardware inoperable, thereby substantially diminishing the value of the vehicle, to force him to renew his subscription to the Blue Link service.

113.   Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract

114.   Hyundai breached the contract and the implied covenant of good faith and fair dealing by, inter alia, equipping the Class Vehicles with Blue Link Telematics Systems that will become permanently disabled if owners do not enroll in the Blue Link Subscription service for more than one year, and by refusing to pay for the replacement of such systems.

115.   As a direct and proximate result of Hyundai's breach of contract or common law warranty, Plaintiff and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**SEVENTH CAUSE OF ACTION**

**FRAUD BY CONCEALMENT**

**(Based on California Law)**

116.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

117.   The misrepresentations, nondisclosure, and/or concealment of material facts made by Hyundai to Plaintiff and the members of the Class, as set forth above, were known, or through reasonable care should have been known, by Hyundai to be false and material and were intended by Hyundai to mislead Plaintiff and the members of the Class.

118.   Hyundai had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed their Class Vehicles as safe. Furthermore, Hyundai marketed the Class Vehicles as being equipped with the Hyundai Blue Link Telematics System.  Once Hyundai made representations to the public about safety, quality, functionality, and reliability, as well as about the Hyundai Blue Link Telematics System in particular, Hyundai was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

119.   In addition, Hyundai had a duty to disclose these omitted material facts because they were known and/or accessible only to Hyundai which has superior knowledge and access to the facts, and Hyundai knew they were not known to or reasonably discoverable by Plaintiff and the other Class members.  These omitted facts

-33-

1   were material because they directly impact the safety, quality, functionality, reliability,

2   and value of the Class Vehicles.

3       120.   Hyundai actively concealed and/or suppressed these material facts, in whole

4   or in part, with the intent to induce Plaintiff and the other Class members to purchase or

5   lease Class Vehicles at a higher price for the Class Vehicles, which did not match the

6   Class Vehicles' true value.

7       121.   Plaintiff and the Class were unaware of these omitted material facts that

8   were actively concealed and/or suppressed , in whole or in part, by Hyundai with the

9   intent to induce Plaintiff and the other Class members to purchase or lease the Class

10  Vehicles at a higher price for the Class Vehicles, which did not match the Class Vehicles'

11  true value.

12      122.   If Plaintiff and other Class Members had known these material facts, they

13  would not have acted as they did.  Plaintiffs' and the other Class members' actions were

14  justified.  Hyundai was in exclusive control of the material facts and such facts were not

15  known to the public, Plaintiff, or the Class Members.

16      123.   As a result of the conduct of Hyundai, Plaintiff and the Class members have

17  been damaged.

18      124.   In addition to such damages, Plaintiff seeks punitive or exemplary damages

19  pursuant to California Civil Code § 3294 in that Hyundai engaged in "an intentional

20  misrepresentation, deceit, or concealment of a material fact known to the defendant with

21  the intention on the part of the defendant of thereby depriving a person of property or

22  legal rights or otherwise causing injury."  Hyundai's conduct warrants as assessment of

23  punitive damages in an amount sufficient to deter such conduct in the future, which

24  amount is to be determined according to proof.

25  //

26  //

27  //

28  //

-34-

## EIGHTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (Based on California Law)

125.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

126.   Hyundai had a duty to provide honest and accurate information to its customers so that customers could make informed decisions regarding the substantial purchase of automobiles.

127.   Hyundai specifically and expressly misrepresented material facts to Plaintiff and Class members, as set forth above, including, but not limited to representations that the Blue Link Telematics System was a standard feature of the Class Vehicles and that if owners opted not to enroll in the Blue Link subscription service, they or subsequent owners could reactivate the Blue Link Telematics System for a nominal charge

128.   Hyundai knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer would be misled by these misrepresentations.

129.   Plaintiff and the Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby.

## NINTH CAUSE OF ACTION
## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES
### (California Civil Code §§ 1791.2 and 1973.2(D))

130.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

131.   Plaintiff and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

132.   The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

133.   Hyundai is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

134.   Plaintiff and the other Class members bought/leased new motor vehicles manufactured by Hyundai.

135.   Hyundai made express warranties to Plaintiffs and the other Class members within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

136.   In its Limited Warranty and in advertisements, brochures, and through other statements in the media, Hyundai expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicles' Owner's Handbook and Warranty Information:

> HYUNDAI NEW VEHICLE LIMITED WARRANTY
>
> WHAT IS COVERED
>
> Repair or replacement of any component originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama (HMMA), Kia Motors Manufacturing Georgia (KMMG) or Hyundai Motor America (HMA) that is found to be in defective material or workmanship under normal use and maintenance, except any item specifically referred to in the section "What is Not Covered." . . . Repairs will be made using new Hyundai Genuine Parts or Hyundai authorized manufactured parts.
>
> WARRANTY PERIOD
>
> The warranty period is limited to 5 years from the date of original retail delivery or date of first use, or 60.000 miles, whichever occurs first.

137.   In addition to the Limited Warranty, Hyundai through its advertisements and the Blue Link User's Manual, warranted several attributes and qualities, including that

1    Blue Link is a dynamic, telematics technology that allows
2    Hyundai vehicles to send—and receive—important and useful
3    information.  The system uses an enhanced cellular network,
4    with automatic roaming, that optimizes connections and
5    prioritizes emergency requests.  In your vehicle, Blue Link uses
6    voice-response technology, with the addition of a live
7    assistance team for your selected needs.

8

9    With Blue Link you get . . .

10   • Automatic emergency assistance, in the unfortunate event
11      of a collision
12   • The convenience of point-of-interest search and
13      navigation assistance, as well as the ability to remotely
14      operate various vehicle features
15   • The peace of mind of self-diagnostic vehicle reports, and
16      more . . .

17        138.   As set forth above in detail, the Class Vehicles are inherently defective in

18   that there are defects in the Class Vehicles' Blue Link Telematics Systems in that they

19   are permanently disabled if the Blue Link subscription service is inactive for more than

20   one year.  This defect was and continues to be covered by Hyundai's express warranties,

21   and these defects substantially impair the use, value, and safety of Hyundai's Class

22   Vehicles to reasonable consumers like Plaintiff and the other Class members.

23        139.   Plaintiff and other Class members contacted Hyundai in response to being

24   informed that their Blue Link Telematics System would be permanently disabled if they

25   were left inactive for more than one year and were told that there only choice was to

26   enroll in the Blue Link subscription service to have to replace the Blue Link Telematics

27   System at their own expense if they wished to reactivate the Blue Link subscription

28   service at some point in the future.

-37-

1   140.   Hyundai and its authorized repair facilities failed and continue to fail to

2   repair the Class Vehicles to match Hyundai's written warranties after a reasonable

3   number of opportunities to do so.

4   141.   Hyundai and its authorized repair facilities refuse to replace the permanently

5   disabled Blue Link Telematics Systems.

6   142.   Hyundai did not promptly replace or buy back the Class Vehicles of Plaintiff

7   and the other Class members.

8   143.   As a result of Hyundai's breach of its express warranties, Plaintiff and the

9   other Class members received goods whose dangerous condition substantially impairs

10  their value to Plaintiff and the other Class members. Plaintiffs and the other Class

11  members have been damaged as a result of the diminished value of Hyundai's products,

12  the products' malfunctioning, or by being forced to pay for the Blue Link subscription

13  service, that they would not otherwise have subscribed to, for the sole purpose of

14  preventing Hyundai from permanently disabling the Blue Link Telematics Systems

15  installed on their vehicles.

16  144.   Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiff and the other

17  Class members are entitled to damages and other legal and equitable relief including, at

18  their election, the purchase price of their Class Vehicles, or the overpayment or

19  diminution in value of their Class Vehicles.

20  145.   Pursuant to California Civil Code § 1794, Plaintiff and the other Class

21  members are entitled to costs and attorneys' fees.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

-38-

# TENTH CAUSE OF ACTION

## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (California Civil Code §§ 1791.1 and 1792)

146.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

147.   Plaintiff and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

148.   The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

149.   Hyundai is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

150.   Hyundai impliedly warranted to Plaintiff and the other Class members that its Class Vehicles were "merchantable" within the meaning of California Civil Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

151.   Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)    Pass without objection in the trade under the contract description.
>
> (2)    Are fit for the ordinary purposes for which such goods are used.
>
> (3)    Are adequately contained, packaged, and labeled.
>
> (4)    Conform to the promises or affirmations of fact made on the container or label.

-39-

152.   The Class Vehicles would not pass without objection in the automotive trade because of the defects in the Class Vehicle's Blue Telematics System that cause it to become permanently disabled.

153.   Because of the defects in the Class Vehicles' Blue Link Telematics System that cause it to become permanently disabled, they are not safe to drive and thus not fit for ordinary purposes.

154.   The Class Vehicles are not adequately labeled because the labeling fails to disclose the defects in the Class Vehicles' Blue Link Telematics System that cause certain crucial safety, communication, navigational, and entertainment functions of the Class Vehicles to become permanently disabled.

155.   Hyundai breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing defects associated with the Blue Link Telematics System.  Furthermore, these defects have caused Plaintiff and the other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

156.   As a direct and proximate result of Hyundai's breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Hyundai's products and the products' malfunctioning.

157.   Pursuant to California Civil Code §§ 1791.1(d) & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

158.   Pursuant to California Civil Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

//

//

## ELEVENTH CAUSE OF ACTION

### DECEIT

### (California Civil Code § 1710)

159.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

160.   Based on Hyundai's conduct as set forth above, Hyundai has engaged in fraud and deceit, as set forth in California Civil Code § 1710, in that Hyundai represented that the Blue Link Telematics System was a standard feature on the Class Vehicles when, in fact, Hyundai knew or should have known that such Blue Link Telematics Systems would be rendered permanently disabled if the owners of the Class Vehicles allow declined to enroll in the Blue Link subscription service for more than one year.

161.   Plaintiff and the Class members have reasonably relied on the material misrepresentations and omissions made by Defendant and have been damaged thereby.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, demands judgment against and general and special relief from Defendant as follows:

1.   An order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiff and his counsel of record to represent the defined Class;

2.   An order enjoining Defendant under California Business and Professions Code §§ 17203 and 17535 and California Civil Code §§ 1780 and 1781:

      a. To rescind the sales of subject vehicles purchased in California and/or reimburse Plaintiffs and the Class members the purchase price for those subject vehicles as restitution of all funds improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or an unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition;

b. To disgorge all profits and compensation improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition; and

c. To cease engaging in false advertising and to disseminate an informational campaign to correct its misrepresentations and material omissions.

3.      Injunctive relief in the form of a recall or free replacement program;

4.      For damages under the causes of action for fraud, negligent misrepresentation, breach of express warranty, breach of implied warranty, beach of contract and/or the covenant of good faith and fair dealing, and statutory deceit;

5.      For punitive damages, pursuant to California Civil Code § 3294;

6.      For reasonable attorney's fees and costs, pursuant to California Code of Civil Procedure § 1021.5, and other statutes as may be applicable;

7.      For prejudgment interest to the extent allowed by law;

8.      For costs of suit incurred herein;

9.      For such other and further relief as the Court deems appropriate.


DATED:  February 10, 2015.                    **MCCUNEWRIGHT, LLP**


                                    BY:   */s/ Richard D. McCune*
                                          Richard D. McCune
                                          Attorney for Plaintiff


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED:  February 10, 2015.                    **MCCUNEWRIGHT, LLP**


                                    BY:   */s/ Richard D. McCune*
                                          Richard D. McCune
                                          Attorney for Plaintiff