1  RICHARD D. McCUNE (State Bar No. 132124)
   rdm@mccunewright.com
2  DAVID C. WRIGHT (State Bar No. 177468)
   dcw@mccunewright.com
3  JAE (EDDIE) K. KIM (State Bar No. 236805)
   jkk@mccunewright.com
4  McCuneWright LLP
   2068 Orange Tree Lane, Suite 216
5  Redlands, California 92374
   Telephone: (909) 557-1250
6  Facsimile: (909) 557-1275

7  Attorneys for Plaintiffs Guy Coss, Serafin Montenegro,
   Ken Smiley, Steven Thibert, Mitchell Goldstein,
8  Torry Somers, and the putative classes

9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  GUY COSS, SERAFIN MONTENEGRO, KEN SMILEY, STEVEN THIBERT, MITCHELL GOLDSTEIN, and TORRY SOMERS, on behalf of themselves and all others similarly situated, | Case No.:  8:15-cv-00237-CJC-DFM |

12  GUY COSS, SERAFIN
    MONTENEGRO, KEN SMILEY,
13  STEVEN THIBERT, MITCHELL
    GOLDSTEIN, and TORRY
14  SOMERS, on behalf of themselves
    and all others similarly situated,
15
                  Plaintiffs,
16
    v.
17
18  HYUNDAI MOTOR AMERICA;
    and DOES 1 through 10, inclusive,
19
                  Defendants.
20
21
22
23
24
25
26
27
28

)  Case No.:  8:15-cv-00237-CJC-DFM
)
)  ***FIRST AMENDED*** CLASS ACTION
)  COMPLAINT
)
)  **1. VIOLATION OF MAGNUSON-**
)     **MOSS WARRANTY ACT (15 U.S.C.**
)     **§ 2301, *et seq.*)**
)
)  **2. VIOLATION OF CALIFORNIA**
)     **UNFAIR COMPETITION LAW**
)     **(California Business & Professions**
)     **Code §§ 17200, *et seq.*)**
)
)  **3. VIOLATION OF CALIFORNIA**
)     **FALSE ADVERTISING LAW**
)     **(California Business & Professions**
)     **Code §§ 17500, *et seq.*)**
)
)  **4. VIOLATION OF CALIFORNIA**
)     **CONSUMER LEGAL REMEDIES**
)     **ACT (Civil Code § 1750 *et seq.*)**
)
)  **5. BREACH OF THE IMPLIED**
)     **WARRANTY OF**
)     **MERCHANTABILITY (California**
)     **Commercial Code § 2314)**
)
)  **6. BREACH OF CONTRACT /**
)     **COMMON LAW WARRANTY**
)     **(Based on California Law)**
)

-1-

First Amended Class Action Complaint
Case No.: 8:15-cv-00237-CJC-DFM

7. **FRAUD BY CONCEALMENT (Based on California Law)**

8. **NEGLIGENT MISREPRESENTATION (Based on California Law)**

9. **VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES (California Civil Code §§ 1791.2 and 1973.2(D))**

10. **VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (California Civil Code §§ 1791.1 and 1792)**

11. **DECEIT (California Civil Code § 1710)**

12. **VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT, (Mich. Comp. Laws §445.901, et seq.)**

13. **VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (Washington Revised Code § 19.86.010, et seq.,)**

14. **VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (Nevada Revised Statute § 41.600, et seq.,)**

15. **VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT (Kansas Statute § 50-623, et seq.)**

16. **VIOLATIONS OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (Rhode Island General Laws § 6-13.1-1, et seq.,)**

**DEMAND FOR JURY TRIAL**

Judge Assigned:   Hon. Cormac J. Carney
Complaint Filed:  Feb. 10, 2015

-2-

Plaintiffs Guy Coss, Serafin Montenegro, Ken Smiley, Steven Thibert, Mitchell Goldstein, and Torry Somers, on behalf of themselves  and on behalf of all others similarly situated (*i.e.*, the members of the Plaintiff Classes described and defined within this First Amended Complaint ("FAC")), herein allege as follows:

# I

## OVERVIEW

1.      This is a civil action challenging the unlawful scheme engaged in by Defendant Hyundai Motor America (hereinafter "Defendant" or "Hyundai") in the selling and continued servicing of its telematics remote monitoring feature, "Blue Link Telematics System."  The term "telematics" refers to the branch of information technology that deals with the long-distance transmission of computerized information.  The term has evolved to refer to automobile systems that combine global position satellite tracking and other wireless communications for automatic roadside assistance and remote diagnostics, first popularized by General Motors Corporation with its OnStar system.

2.      Beginning in 2011, Hyundai introduced the Hyundai Blue Link Telematics System in certain models of its 2012 model year line-up, including the popular Hyundai Sonata.  According to Hyundai, the Blue Link system "uses an enhanced cellular network, with automatic roaming, that optimizes connections and prioritizes emergency requests."  With Blue Link, Hyundai customers get automatic emergency assistance in the event of a collision, point-of-interest search and navigation assistance, the ability to remotely operate various vehicle features, and self-diagnostic vehicle reports.  Though Hyundai owners must subscribe in order to receive the benefits of the Blue Link system, all necessary hardware for the Blue Link system is a "standard feature" included in the sale price of Blue Link equipped Hyundai vehicles.

3.      Purchasers of Blue Link equipped Hyundai vehicles were provided with a trial subscription period ranging from 3 months to one year free of charge.  Following the expiration of the free trial period, Hyundai owners had the option to pay for continued

-3-

Blue Link subscription service or to pay nothing and allow the Blue Link subscription service to lapse.  If Hyundai owners either did not subscribe to Blue Link or thereafter allowed their subscription to lapse, Hyundai provided a telephone number that the vehicle owner, or any subsequent owner of that vehicle, could call in order to reactivate the Blue Link service for a "nominal connection fee."

4.      At no time from 2011 through the end of 2014, did Hyundai inform purchasers of its Blue Link equipped vehicles that if owners did not subscribe to the Blue Link subscription service, the Blue Link Telematics hardware would be rendered non-functional and would require replacement at the customer's expense if they, or a subsequent owner of the vehicle, desired to reactivate the Blue Link subscription service at a later time.

5.      Nevertheless, beginning as early as January 7, 2015, Hyundai notified owners of its Blue Link equipped vehicles whose Blue Link subscription services had been inactive for more than one year, that "**If you do not reactivate your Blue Link services by January 15, 2015, your current Blue Link system in your vehicle will be permanently disabled.**"  In the same notice, Hyundai informed said owners that "[reactivating your Blue Link services after it is disabled will require a hardware change, dealer-assisted installation, and will cost a minimum of $500 to replace the telematics unit plus any applicable subscription fees."

6.      In threatening to permanently disable the Blue Link Telematics hardware, Hyundai forced owners of its Blue Link equipped vehicles to choose between: a) subscribing to the Blue Link service, that they previously had been informed was optional; or b) allowing the Blue Link Telematics hardware that they had purchased with their vehicles to be rendered non-functional, thereby devaluing their vehicles, and requiring a significant additional expense in the event they, or any subsequent owner, desired to avail themselves of the Blue Link subscription service.

7.      This action by Hyundai constitutes a direct breach of the contract terms of the sale of Blue Link equipped Hyundai vehicle as provided for in the Monroney Sticker

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

affixed to such vehicles which included as a "**STANDARD FEATURE**" the "**Hyundai Blue LinkTM Telematics System.**"  It also constitutes a breach Hyundai's representation to owners, as set forth in Hyundai's Blue Link Handbook, that if they declined enrollment in the Blue Link subscription service, the Blue Link service could later "be reactivated by the owner or subsequent owners" for "a nominal reconnection fee."

8.     Defendant Hyundai made numerous material misrepresentations with regard to the Blue Link Telematics System, including that purchasers of Hyundai vehicles equipped with the Blue Link Telematics System were receiving functioning Blue Link Telematics System hardware that would continue to be functional for the life of the vehicle and that owners could reactivate the Blue Link subscription service at any time for a nominal reactivation fee.

9.     Defendant Hyundai also failed to disclose and/or concealed material facts regarding the Blue Link Telematics System, including the fact that the Blue Link Telematics System would be rendered inoperable if Hyundai owners opted not to enroll in the Blue Link subscription service.  As set forth in more detail below, Plaintiffs allege that Defendant Hyundai failed to disclose this fact even after it had actual knowledge that Blue Link Telematics Systems then being sold would be rendered nonfunctional if vehicle owners did not enroll in the Blue Link subscription service.

10.     Plaintiff Guy Coss owns a 2012 Hyundai Sonata Hybrid that he purchased from the Hyundai of Seattle dealership in the state of Washington, on February 8, 2012. As part of this purchase, Hyundai marketed, represented, and warranted that the vehicle was equipped with the Blue Link Telematics System.

11.     Following the expiration of the free trial period for the Blue Link subscription service, Plaintiff Coss opted to discontinue his enrollment in the Blue Link subscription service which expired on February 9, 2013, believing that he or a subsequent owner of the vehicle could later reactivate the Blue Link subscription service for a nominal reconnection fee.

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

12.     However, when Plaintiff Coss was notified by Hyundai on January 7, 2015, that the Blue Link Telematics System that was installed in his vehicle would be rendered permanently inoperable if he did not reactivate his Blue Link subscription service, thereby devaluing his vehicle by an amount exceeding $500, Plaintiff Coss was forced to renew the subscription to the Blue Link service that he did not want and did not have value for him, for the sole purpose of preserving the functionality of the Blue Link Telematics System installed in his vehicle.

13.     Plaintiff Serafin Montenegro owns a 2013 Hyundai Santa Fe that he purchased from the Keyes Hyundai dealership in the state of California, on November 21, 2013.  As part of this purchase, Hyundai marketed, represented, and warranted that the vehicle was equipped with the Blue Link Telematics System.

14.     Following the expiration of the free trial period for the Blue Link subscription service, Plaintiff Montenegro opted to discontinue his enrollment in the Blue Link subscription service.  At the time Plaintiff Montenegro discontinued his Blue Link subscription, he was informed both by representatives of Keyes Hyundai and of Hyundai Blue Link subscription service that he could reactivate his Blue Link subscription for the same subscription  fee he had been paying,  Plaintiff Montenegro was never informed that if he discontinued his Blue Link subscription service his Blue Link Telematics System would be permanently disabled and require replacement before he or a subsequent owner of the vehicle could reactivate the Blue Link subscription service.

15.     Plaintiff Ken Smiley owns a 2013 Hyundai Santa Fe that he purchased from the McCarthy Hyundai dealership in the state of Kansas, on September 9, 2012.  As part of this purchase, Hyundai marketed, represented, and warranted that the vehicle was equipped with the Blue Link Telematics System.

16.     Following the expiration of the free trial period for the Blue Link subscription service, Plaintiff Smiley continued his enrollment for a period of time but ultimately opted to discontinue his enrollment, believing that he or a subsequent owner of

-6-

the vehicle could later reactivate the Blue Link subscription service for a nominal reconnection fee.

17.   Plaintiff Steven Thibert owns a 2012 Hyundai Veloster that he purchased from the Courtesy Hyundai dealership in the state of Rhode Island, on February 19, 2012. As part of this purchase, Hyundai marketed, represented, and warranted that the vehicle was equipped with the Blue Link Telematics System.

18.   Plaintiff Mitchell Goldstein owns a 2013 Hyundai Elantra GT that he purchased from the Suburban Hyundai dealership in the state of Michigan, in March 2013.  As part of this purchase, Hyundai marketed, represented, and warranted that the vehicle was equipped with the Blue Link Telematics System.

19.   Following the expiration of the free trial period for the Blue Link subscription service, Plaintiff Goldstein continued his enrollment for a period of time but ultimately opted to discontinue his enrollment, believing that he or a subsequent owner of the vehicle could later reactivate the Blue Link subscription service for a nominal reconnection fee.

20.   Plaintiff Torry Somers owns a 2013 Hyundai Sonata Hybrid that he purchased from the Planet Hyundai dealership in the state of Nevada, on May 31, 2013. As part of this purchase, Hyundai marketed, represented, and warranted that the vehicle was equipped with the Blue Link Telematics System.

21.   Following the expiration of the free trial period for the Blue Link subscription service, Plaintiff Somers continued his enrollment for a period of time but ultimately opted to discontinue his enrollment.

22.   Plaintiffs, for themselves and all others similarly situated, bring this action for contractual enforcement and damages, as well as restitution and injunctive relief, including requiring Hyundai to: 1) provide the hardware/reconnection update for a nominal fee (as opposed to more than $500 as it threatens); 2) reimburse customers the replacement and reconnection fees and costs they incurred after Hyundai issued its threatening letter of permanently disabling the feature; 3) reimburse those customers

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

whose vehicles have been devalued by the permanent disabling of the feature and/or install functioning Blue Link Telematics Systems in those vehicles whose Blue Link Telematics Systems have been rendered nonfunctional; 4) send customers a notification of this change in practice; and 5) refrain from engaging in this practice in the future.  This action is brought for claims of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation, as well as violation of the Unfair Business Practices Act, California Business & Professions Code § 17200, *et seq.*; False Advertising, California Business & Professions Code § 17500, *et seq.*; Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*; and statutory Deceit, California Civil Code § 1710.

## II

## JURISDICTION AND VENUE

23.    This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and some Plaintiffs and other putative class members are citizens of a different state than Defendant.

24.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs Coss, Montenegro, Smiley, Thibert, Goldstein, and Somers submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant Hyundai because Defendant is headquartered in the District, has conducted and continues to conduct substantial business in the District, and because Defendant has committed the acts and omissions complained of herein in the District.

25.    Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391 because Defendant Hyundai Motor America is headquartered in Fountain Valley, California, within the District, sells a substantial amount of automobiles in this district, has dealerships in this district, and many of Defendant's acts complained of herein occurred within this district.

//

## III

## PARTIES

26.     Plaintiff Guy Coss is a resident and citizen of Shoreline, Washington. Plaintiff Coss owns a 2012 Hyundai Sonata Hybrid which he purchased from Hyundai of Seattle on February 8, 2012.

27.     Plaintiff Serafin Montenegro is a resident and citizen of Woodland Hills, California.  Plaintiff Montenegro owns a 2013 Hyundai Santa Fe which he purchased from Keyes Hyundai on March 21, 2013.

28.     Plaintiff Ken Smiley is a resident and citizen of Overland Park, Kansas. Plaintiff Smiley owns a 2013 Hyundai Santa Fe which he purchased from McCarthy Hyundai on September 9, 2012.

29.     Plaintiff Steven Thibert is a resident and citizen of Pawtucket, Rhode Island. Plaintiff Thibert owns a 2012 Hyundai Veloster which he purchased from Courtesy Hyundai on February 19, 2012.

30.     Plaintiff Mitchell Goldstein is a resident and citizen of Bloomfield Hills, Michigan.  Plaintiff Goldstein owns a 2013 Hyundai Elantra GT which he purchased from Suburban Hyundai in March 2013.

31.     Plaintiff Torry Somers is a resident and citizen of Las Vegas, Nevada. Plaintiff Somers owns a 2013 Hyundai Sonata Hybrid which he purchased from Planet Hyundai on May 31, 2013.

32.     Based on information and belief, Defendant Hyundai Motor America is a corporation which is incorporated in the state of California, and is a citizen of and has its principal place of business in the city of Fountain Valley, California.

33.     The true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

1    leave of Court to amend this FAC to reflect the true names and capacities of the

2    Defendants designated herein as DOES when such identities become known.

3         34.    Based upon information and belief, Plaintiffs allege that at all times

4    mentioned herein, each and every Defendant was acting as an agent and/or employee of

5    each of the other Defendants, and at all times mentioned was acting within the course and

6    scope of said agency and/or employment with the full knowledge, permission, and

7    consent of each of the other Defendants.  In addition, each of the acts and/or omissions of

8    each Defendant alleged herein were made known to, and ratified by, each of the other

9    Defendants.

10                                    **IV**

11                          **FACTUAL ALLEGATIONS**

12   **A.    Plaintiffs' Purchases of Blue Link Equipped Hyundai Vehicles**

13         **1.    Washington Plaintiff Guy Coss**

14         35.    Plaintiff Guy Coss purchased a new 2012 Sonata Hybrid on or about

15   February 8, 2012, at Hyundai of Seattle, in Seattle, Washington.  As part of his decision

16   to make this purchase, Plaintiff Coss was shown marketing materials touting the Blue

17   Link Telematics System as being a standard feature in his vehicle and relied on this

18   representation when he decided to purchase the vehicle.  Included in the purchase of the

19   vehicle, as listed by the Monroney Sticker, was "**Hyundai Blue LinkTM Telematics**

20   **System (90 –Day Free Trial)** – Technology that enables the driver to stay connected via

21   In-Car Web or Smartphone App; Subscription Required."  Based on these

22   representations, Plaintiff Coss reasonably understood that the Blue Link feature would be

23   a permanent fixture of his vehicle, similar to all of the other features listed on the

24   Monroney Sticker, regardless of whether he renewed the Blue Link subscription service

25   after the promotional free service period.

26         36.    Other than mention of the subscription fee for the service, there was no

27   notification at the time of purchase that Defendant would later cause the Blue Link

28   Telematics System hardware to be rendered permanently inoperable if he opted not to

                                    -10-

enroll in the optional Blue Link subscription service.  Plaintiff Coss was not notified that if he failed to enroll in the Blue Link subscription service, he would incur a fee in excess of $500 and be required to replace the Blue Link Telematics System hardware in order to reconnect to the service at a later time.

37.     At the time of his purchase of the vehicle, Plaintiff Coss was informed, and availed himself, of the free trial subscription period for Blue Link service and, in fact, enrolled in the auto-renewal program by providing his credit card information in order to take advantage of Hyundai's promotional offer of doubling the length of the free trial subscription period when auto-renewal was selected during the enrollment process. Because Plaintiff Coss did not find the Blue Link System had value equal to the subscription price, following the free trial period he cancelled the subscription service.

## 2.     California Plaintiff Serafin Montenegro

38.     Plaintiff Montenegro purchased a new 2013 Hyundai Santa Fe from Keyes Hyundai, in Van Nuys, California, on November 21, 2013.  As part of his decision to make this purchase, Plaintiff Montenegro was shown marketing materials touting the Blue Link Telematics System as being a standard feature in his vehicle and relied on this representation when he decided to purchase the vehicle.  Included in the purchase of the vehicle, as listed by the Monroney Sticker, was "**Hyundai Blue LinkTM Telematics System (90 –Day Free Trial)**."  Based on these representations, Plaintiff Montenegro reasonably understood that the Blue Link feature would be a permanent fixture of his vehicle, similar to all of the other features listed on the Monroney Sticker, regardless of whether he renewed the Blue Link subscription service after the promotional free service period.

39.     Other than mention of the subscription fee for the service, there was no notification at the time of purchase that Defendant would later cause the Blue Link Telematics System hardware to be rendered permanently inoperable if he opted not to enroll in the optional Blue Link subscription service.  Plaintiff Montenegro was not notified prior to the time sale that if he failed to enroll in the Blue Link subscription

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

service, he would incur a fee in excess of $500 and be required to replace the Blue Link Telematics System hardware in order to reconnect to the service at a later time.

40.    At the time of his purchase of the vehicle, Plaintiff Montenegro was informed, and availed himself, of the free trial subscription period for Blue Link service and, in fact, enrolled in the auto-renewal program by providing his credit card information.  Because Plaintiff Montenegro did not find the Blue Link System had value equal to the subscription price, at some point after the end of the free trial period he cancelled the subscription service.

41.    At the time Plaintiff Montenegro discontinued his Blue Link subscription, he was informed both by representatives of Keyes Hyundai and of Hyundai Blue Link subscription service that he could reactivate his Blue Link subscription for the same subscription  fee he had been paying,  Plaintiff Montenegro was never informed that if he discontinued his Blue Link subscription service his Blue Link Telematics System would be permanently disabled and require replacement before he or a subsequent owner of the vehicle could reactivate the Blue Link subscription service.

**3.    Kansas Plaintiff Ken Smiley**

42.    Plaintiff Ken Smiley purchased a new 2013 Hyundai Santa Fe from McCarthy Hyundai in Olathe, Kansas, on September 9, 2012.  As part of his decision to make this purchase, Plaintiff Smiley was shown marketing materials touting the Blue Link Telematics System as being a standard feature in his vehicle and relied on this representation when he decided to purchase the vehicle.  Included in the purchase of the vehicle, as listed by the Monroney Sticker, was "**Hyundai Blue LinkTM Telematics System (90 –Day Free Trial)**."  Based on these representations, Plaintiff Smiley reasonably understood that the Blue Link feature would be a permanent fixture of his vehicle, similar to all of the other features listed on the Monroney Sticker, regardless of whether he renewed the Blue Link subscription service after the promotional free service period.

43.   Other than mention of the subscription fee for the service, there was no notification at the time of purchase that Defendant would later cause the Blue Link Telematics System hardware to be rendered permanently inoperable if he opted not to enroll in the optional Blue Link subscription service.  Plaintiff Smiley was not notified prior to the time sale that if he failed to enroll in the Blue Link subscription service, he would incur a fee in excess of $500 and be required to replace the Blue Link Telematics System hardware in order to reconnect to the service at a later time.

44.   At the time of his purchase of the vehicle, Plaintiff Smiley was informed, and availed himself, of the free trial subscription period for Blue Link service.  Plaintiff Smiley continued his Blue Link subscription for a period of time following the end of the free trial period, but ultimately found that the Blue Link System did not have value equal to the subscription price cancelled the subscription service.

45.   At the time Plaintiff Smiley discontinued his enrollment, he was informed that he could reactivate his Blue Link subscription service at any time at the normal annual rate for the service.  He was not informed of any reconnection or activation fee.

**4.     Rhode Island Plaintiff Steven Thibert**

46.   Plaintiff Steven Thibert purchased a new 2012 Hyundai Veloster from Courtesy Hyundai in Pawtucket, Rhode Island, on February 19, 2012.  As part of his decision to make this purchase, Plaintiff Thibert was shown marketing materials touting the Blue Link Telematics System as being a standard feature in his vehicle and relied on this representation when he decided to purchase the vehicle.  Included in the purchase of the vehicle, as listed by the Monroney Sticker, was "**Hyundai Blue LinkTM Telematics System (90 –Day Free Trial)**."  Based on these representations, Plaintiff Thibert reasonably understood that the Blue Link feature would be a permanent fixture of his vehicle, similar to all of the other features listed on the Monroney Sticker, regardless of whether he renewed the Blue Link subscription service after the promotional free service period.

47.     Other than mention of the subscription fee for the service, there was no notification at the time of purchase that Defendant would later cause the Blue Link Telematics System hardware to be rendered permanently inoperable if he opted not to enroll in the optional Blue Link subscription service.  Plaintiff Thibert was not notified prior to the time sale that if he failed to enroll in the Blue Link subscription service, he would incur a fee in excess of $500 and be required to replace the Blue Link Telematics System hardware in order to reconnect to the service at a later time.

### 5.     Michigan Plaintiff Mitchell Goldstein

48.     Plaintiff Mitchell Goldstein purchased a new 2013 Hyundai Elantra GT from Suburban Hyundai in Troy, Michigan, in March 2013.  As part of his decision to make this purchase, Plaintiff Goldstein was shown marketing materials touting the Blue Link Telematics System as being a standard feature in his vehicle and relied on this representation when he decided to purchase the vehicle.  Included in the purchase of the vehicle, as listed by the Monroney Sticker, was "**Hyundai Blue LinkTM Telematics System (90 –Day Free Trial) Technology that enables the driver to stay connected via In-Car, Web, or Smartphone App; Subscription Required**."  Based on these representations, Plaintiff Goldstein reasonably understood that the Blue Link feature would be a permanent fixture of his vehicle, similar to all of the other features listed on the Monroney Sticker, regardless of whether he renewed the Blue Link subscription service after the promotional free service period.

49.     Other than mention of the subscription fee for the service, there was no notification at the time of purchase that Defendant would later cause the Blue Link Telematics System hardware to be rendered permanently inoperable if he opted not to enroll in the optional Blue Link subscription service.  Plaintiff Goldstein was not notified prior to the time sale that if he failed to enroll in the Blue Link subscription service, he would incur a fee in excess of $500 and be required to replace the Blue Link Telematics System hardware in order to reconnect to the service at a later time.

//

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

**6.      Nevada Plaintiff Torry Somers**

50.      Plaintiff Torry Somers is a resident and citizen of Las Vegas, Nevada. Plaintiff Somers owns a 2013 Hyundai Sonata Hybrid which he purchased from Planet Hyundai, on May 31, 2013.  As part of his decision to make this purchase, Plaintiff Somers was shown marketing materials touting the Blue Link Telematics System as being a standard feature in his vehicle and relied on this representation when he decided to purchase the vehicle.  Included in the purchase of the vehicle, as listed by the Monroney Sticker, was "**Hyundai Blue LinkTM Telematics System (90 –Day Free Trial**)."  Based on these representations, Plaintiff Somers reasonably understood that the Blue Link feature would be a permanent fixture of his vehicle, similar to all of the other features listed on the Monroney Sticker, regardless of whether he renewed the Blue Link subscription service after the promotional free service period.

51.      Other than mention of the subscription fee for the service, there was no notification at the time of purchase that Defendant would later cause the Blue Link Telematics System hardware to be rendered permanently inoperable if he opted not to enroll in the optional Blue Link subscription service.  Plaintiff Somers was not notified prior to the time sale that if he failed to enroll in the Blue Link subscription service, he would incur a fee in excess of $500 and be required to replace the Blue Link Telematics System hardware in order to reconnect to the service at a later time.

52.      At the time of his purchase of the vehicle, Plaintiff Somers was informed, and availed himself, of the free trial subscription period for Blue Link service.  Because Plaintiff Somers did not find the Blue Link System had value equal to the subscription price, at some point following the free trial period he cancelled the subscription service.

53.      At the time Plaintiff Somers discontinued his enrollment, he reasonably believed that he or a subsequent owner of the vehicle could later reactivate the Blue Link subscription service for a nominal reconnection fee.

//

//

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

**B.    Defendant Hyundai's Threat to Render the Blue Link Telematics Nonfunctional If Owners Did Not Enroll in the Subscription Service**

54.    On or about January 7, 2015, Plaintiff Coss received an email from Hyundai which threatened that if he did not renew the service by January 15, 2015, for a price of $39 or $99, then "your current Blue Link system in your vehicle will be permanently disabled," and "[r]eactivating your Blue Link services after it is disabled will require a hardware change, dealer-assisted installation, and will cost a minimum of $500 to replace the telematics unit plus any applicable subscription fees."  (Email from Hyundai Blue Link to Guy Coss, 1/17/2015, Ex. A.)  The explanation provided was that, "[s]ince your Blue Link Services have been inactive for more than a year, the mobile phone number in your vehicle's telematics hardware must be turned off and returned to the carrier for commercial use."

55.    This was never a term of the original purchase agreement or disclosed at the time of purchase, and ran contrary to Plaintiffs' reasonable expectations that the Blue Link Telematics System was included as a permanent standard feature of the vehicle and could be reconnected at any time for a nominal fee.  Furthermore, the "minimum of $500" cost to replace the Blue Link Telematics System hardware is contrary to Hyundai's sales script which states that customers are to be notified that only a "nominal reconnection fee will apply" for reactivating the Blue Link service.

56.    As a result of this threatening letter, Plaintiff Coss was forced to pay the $39 fee to renew a subscription to the Blue Link service solely to prevent the normal resale value of his vehicle from being substantially harmed by the permanent disabling of the Blue Link Telematics System.

57.    By acting in such a way as to render the Blue Link Telematics System nonfunctional, Hyundai breached its agreement that the Blue Link system was a standard permanent feature included in the purchase of his vehicle.

58.    Had Plaintiffs known at the time of purchase that the Blue Link feature would be rendered inoperable by Hyundai, or would require more than $500 in fees to

1   reactivate the system in order to avoid a loss in value of the vehicle by that amount, then

2   he would have considered buying other competitive vehicle manufacturers' models which

3   do have a telematics feature as a permanent fixture in the vehicle or would not have been

4   willing to pay as much as he had for this vehicle.

5       59.    To the extent that Hyundai attempted to reserve discretion in implementing

6   its obligations regarding the Blue Link service as a standard feature included in his

7   purchase of the vehicle, Plaintiffs reasonably did not expect that Hyundai would exercise

8   any such discretion to subsequently render the Blue Link Telematics System hardware

9   permanently inoperable or use the threat of rendering such hardware inoperable,

10  substantially diminishing the value of the vehicle, to force him to renew subscriptions to

11  the Blue Link service.

12      60.    Therefore, Plaintiffs have been damaged as a result of Hyundai's practice.

13  **C.    Defendant Hyundai's Entry into Vehicle Telematics**

14      61.    Hyundai is one of the largest auto-manufacturers in the world, and designs,

15  manufactures, advertises, and sells numerous well-known brands.  In 2011, in an attempt

16  to capitalize on the most lucrative new component in automobile sales, vehicle

17  telematics, a market that had been dominated for two decades by General Motor's

18  subsidiary OnStar, Hyundai developed, marketed, and sold its own telematics system,

19  called "Blue Link" as a standard feature in selected 2012 model year vehicles.

20      62.    GM pioneered the telematics industry when it began including its OnStar

21  telematics system in General Motors vehicles in 1996.  Since then, GM's OnStar

22  telematics unit has "quietly become a profit margin superstar" or "financial superstar with

23  GM," with revenues estimated at about $1.5 billion annually and a profit margin of 30-35

24  percent, a margin which far exceeds the profit margin of selling the vehicles themselves.

25  There are about 6 million active OnStar users in North America.[1]

26

27  _____

28  [1] http://www.autonews.com/article/20130527/OEM/305279958/not-satisfied-with-
onstars-steady-profits-gm-wants-to-create-a-global-

-17-

63.     The popularity of OnStar equipped vehicles eventually attracted competitors.[2]  The profit potential experienced by GM's OnStar explains why auto manufacturers are pouring billions of dollars into developing connected cars, according to a January 2014 study conducted by the Center of Automotive Research.[3]  Auto manufacturers have always looked for ways to entice customers to purchase their vehicles, including competition for the greatest horsepower and, when gas prices experienced significant increases, a competition for the best gas mileage.  But as technology develops and consumers increasingly value the ability to be "connected," auto manufacturers have responded by marketing the connectedness of their vehicles and providing services similar to GM's OnStar.[4]  Mercedes has Mbrace, BMW offers BMW Assist, Lexus has Enform, and Ford has Sync.

64.     As a result, connected cars are becoming the best-selling models on dealer lots.  In-vehicle technology is the top selling point for 39 percent of car buyers today – more than twice the 14 percent who say their first consideration is traditional performance measures such as power and speed, according to a study by the consulting firm Accenture released in late 2013.  Consumers are increasingly looking for solutions that allow them to stay connected to their digital lives wherever they are.  As the difference between first and worst in auto quality has narrowed, the connected car is becoming the next frontier in how automakers distinguish themselves.[5]

65.     Therefore, to be competitive today, most car manufacturers include telematics either as a standard or optional feature.  Most telematics systems initially were available only in high-end luxury models, but they are now offered as a standard feature

---

http://www.bloomberg.com/bw/articles/2013-05-30/onstar-gms-surprisingly-strong-toehold-in-the-tech-world

[2] http://www.nytimes.com/2010/04/25/automobiles/25STAR.html?pagewanted=all&_r=0

[3] http://www.autonews.com/article/20140110/OEM06/301109910/the-race-to-market-the-connected-car

[4] http://wot.motortrend.com/hyundai-blue-link-pricing-features-released-85835.html

on nearly all vehicle models.  While OnStar is the clear leader worldwide, the marketing firm ABI research predicts that over 90 percent of all new vehicles will offer telematics by 2016.[6]  The telematics systems featured in cars are the primary component of the fast-growing market referred to as the "connected car."  In 2013, the connected car market was expected to see revenue of nearly $22 billion.[7]

66.     The launch of Hyundai's Blue Link Telematics System demonstrated that it was joining other auto manufacturers in attempting to be more than just a car company, but to deliver a package of goods, which ultimately means higher profits.  New car sales can be profitable, but it is the add-ons like the subscription services that accompany vehicle telematics systems that are where vehicle companies can make big profits.[8]

67.     In an attempt to compete with OnStar, Hyundai set the price of it Blue Link subscription packages at just below the price of comparable OnStar packages.[9]

68.     Blue Link was marketed and sold as a standard feature in the following models (hereinafter the "Class Vehicles"):

- 2012 Azera
- 2012 Sonata
- 2012 Sonata Hybrid
- 2012 Veloster
- 2013 Azera
- 2013 Elantra GT

---

[5] http://www.autonews.com/article/20140110/OEM06/301109910/the-race-to-market-the-connected-car
[6] http://electronicdesign.com/communications/telematics-connect-your-car-world
[7] http://www.eweek.com/mobile/google-deals-with-hyundai-kia-move-connected-car-market-forward#sthash.27TdseZE.dpuf
[8] http://www.examiner.com/article/hyundai-launches-all-new-blue-link-telematics-platform
[9] http://content.usatoday.com/communities/driveon/post/2011/06/hyundai-blue-link-gm-general-motors-onstar/1#.VMgtvbMtFaQ; http://wot.motortrend.com/hyundai-blue-link-pricing-features-released-85835.html

-19-

- 2013 Genesis
- 2013 Genesis Coupe
- 2013 Santa Fe
- 2013 Santa Fe Sport
- 2013 Sonata
- 2013 Sonata Hybrid
- 2013 Veloster
- 2014 Azera
- 2014 Elantra
- 2014 Elantra Coupe
- 2014 Elantra GT
- 2014 Equus
- 2014 Genesis
- 2014 Genesis Coupe
- 2014 Santa Fe
- 2014 Santa Fe Sport
- 2014 Sonata
- 2014 Sonata Hybrid
- 2014 Tucson
- 2014 Veloster
- 2015 Elantra
- 2015 Equus
- 2015 Genesis
- 2015 Genesis Coupe
- 2015 Sonata
- 2015 Sonata Hybrid
- 2015 Tucson
- 2015 Veloster

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

**D.     Defendant Hyundai's Campaign to Increase Blue Link Subscription Service Enrollment**

69.     GM and all other auto manufacturers selling vehicles connected with telematics have a strong financial incentive to attempt to convert more new vehicle purchasers into continued subscribers.  Analysts estimate that OnStar converts about half of new-car buyers to subscribers, while the feature becomes profitable at about a 30% retention rate.[10]

70.     The dominant way that auto manufacturers monetize telematics follows the formula of smart phones – through a service profit model.   The hardware and free trial are included as part of the vehicle purchase – typically 6-12 months for services – and then a monthly or annual subscription fee is charged.  GM OnStar, Mercedes-Benz Mbrace, and Hyundai Blue Link are among others who have adopted this model.  Therefore, having subscribers pay for continued subscription for telematics services is paramount to achieving high profit margins.[11]

71.     In order to increase renewal rates, some auto manufacturers, including Hyundai, include terms in signing customers up for the free trial period that the subscription to the telematics service will be automatically renewed unless it is canceled. The Blue Link Terms and Conditions state that "[u]pon the expiration of the applicable trial period(s) for your Service plan, if we have a valid form of payment on file for you, we will automatically charge your account for the applicable service fees according to the payment schedule associated with your Service Plan and payment is due in advance." Hyundai makes no mention of permanently disabling the telematics hardware unit or that in addition to paying for reactivation, a customer would also have to pay to replace inoperable hardware, or that the cost of replacing the unit would exceed $500.

---

[10] http://www.autonews.com/article/20130527/OEM/305279958/not-satisfied-with-onstars-steady-profits-gm-wants-to-create-a-global-

[11] http://www.trajectorygroup.com/blog/what-business-model-telematics-viewpoint

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

72.     Beginning in early 2015, Hyundai engaged in an even more aggressive way to induce customers to pay for renewals of their subscriptions.  In or about January 2015, Hyundai began disseminating notices by email and other means threatening that if vehicle owners whose Blue Link Telematics System subscription service had been inactive for more than one year did not renew the service by January 15, 2015, then "your current Blue Link system in your vehicle will be permanently disabled," and defining what it meant by "permanently disabled" by stating in a footnote that "[r]eactivating your Blue Link services after it is disabled will require a hardware change, dealer-assisted installation, and will cost a minimum of $500 to replace the telematics unit plus any applicable subscription fees."  Furthermore, the "minimum of $500" cost to replace the Blue Link telematics unit is contrary to Hyundai's sales script which states that customers are to be notified that only a "nominal reconnection fee will apply" for reactivating the Blue Link service at a later time.

**E.    Hyundai's Practice of Rendering the Blue Link Telematics System Hardware Inoperable Substantially Harms Consumers**

73.     The cost to customers as a result of Hyundai's practice of permanently disabling the Blue Link Telematics System hardware if they do not pay to renew their Blue Link subscription service unfairly places vehicles owners in the position of either having to pay for a subscription service that does not have value equal to the subscription price or to have the Blue Link Telematics System hardware be rendered inoperable, thus reducing the value of the car.

74.     The substantial value of the Blue Link Telematics System hardware is illustrated by the listing of the 2014 Hyundai Sonatas in the Kelly Blue Book, which states under "Notable Equipment - Standard Equipment": "Hyundai is renowned for outfitting its vehicles with a comprehensive serving of standard features, and the 2014

//

//

//

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

Sonata is no exception.  Topping the list is Hyundai's Blue Link infotainment and concierge service."[12]

75.     Therefore, all Class Members have been injured and are entitled to damages, restitution, and/or injunctive relief for Hyundai's practice of requiring paid subscription renewals to avoid the permanent disabling of the telematics hardware, instead of voluntarily upgrading the hardware units for free or just a nominal fee for all Subject Vehicles, has or will imminently result in substantial loss in value of the vehicle the moment the subscription is canceled and/or the vehicle is sold.

**F.      Despite Express Warranties, Hyundai Refuses to Replace Blue Link Telematics Systems That Are or Will Become Permanently Disabled**

76.     In connection with the sale (by purchase or lease) of each one of its new vehicles, Hyundai provides an express limited warranty on each vehicle.  In those warranties, Hyundai promises to repair any defect or malfunction that arises in the vehicle during a defined period of time.  This warranty is provided by Hyundai to the vehicle owner in writing and regardless of what state the customer purchased his or her vehicle in.  Hyundai also issues a separate warranty for each model year, although all of the terms of the warranty are largely similar from year to year.  As further alleged below, the relevant terms of the warranties in this case are identical, regardless of the model year of the Class Vehicles.

77.     Plaintiffs were provided with a warranty and it was a basis of his purchase of their vehicles.

78.     In its Limited Warranty and in advertisements, brochures, and through other statements in the media, Hyundai expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  The following uniform language appears in Hyundai's Owner's Handbook and Warranty Information:

---

[12] http://www.kbb.com/hyundai/sonata/2014-hyundai-sonata/?r=71746288644224720

1   HYUNDAI NEW VEHICLE LIMITED WARRANTY

2   WHAT IS COVERED

3   Repair or replacement of any component originally

4   manufactured or installed by Hyundai Motor Company, Hyundai

5   Motor Group, Hyundai Motor Manufacturing Alabama

6   (HMMA), Kia Motors Manufacturing Georgia (KMMG) or

7   Hyundai Motor America (HMA) that is found to be in defective

8   material or workmanship under normal use and maintenance,

9   except any item specifically referred to in the section "What is

10  Not Covered." . . . Repairs will be made using new Hyundai

11  Genuine Parts or Hyundai authorized manufactured parts.

12  WARRANTY PERIOD

13  The warranty period is limited to 5 years from the date of

14  original retail delivery or date of first use, or 60.000 miles,

15  whichever occurs first.

16      79.   Plaintiffs and the Class Members experienced defects within the warranty

17  period.  However, despite the existence of the express warranties provided to Plaintiffs

18  and Class Members, Hyundai has failed to honor the terms of the warranties by failing to

19  "[r]epair or replace[] any component originally manufactured or installed by Hyundai

20  Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama

21  (HMMA), Kia Motors Manufacturing Georgia (KMMG) or Hyundai Motor America

22  (HMA) that is found to be in defective material or workmanship under normal use and

23  maintenance."

24                                **IV**

25                  **CLASS ACTION ALLEGATIONS**

26      80.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

27  Procedure 23(a), (b)(2), and (b)(3) on behalf of the following class:

28

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

- All persons or entities in the United States who own or lease a Hyundai vehicle equipped with the Hyundai Blue Link Telematics System (the "Nationwide Class").

81.   Alternatively, Plaintiffs propose the following state-specific classes:

- All persons or entities who reside in the state of California that own or lease a Hyundai vehicle equipped with the Hyundai Blue Link Telematics System (the "California Class").

- All persons or entities who reside in the state of Washington that own or lease a Hyundai vehicle equipped with the Hyundai Blue Link Telematics System (the "Washington Class").

- All persons or entities who reside in the state of Kansas that own or lease a Hyundai vehicle equipped with the Hyundai Blue Link Telematics System (the "Kansas Class").

- All persons or entities who reside in the state of Rhode Island that own or lease a Hyundai vehicle equipped with the Hyundai Blue Link Telematics System (the "Rhode Island Class").

- All persons or entities who reside in the state of Michigan that own or lease a Hyundai vehicle equipped with the Hyundai Blue Link Telematics System (the "Michigan Class").

- All persons or entities who reside in the state of Nevada that own or lease a Hyundai vehicle equipped with the Hyundai Blue Link Telematics System (the "Nevada Class").

82.   Excluded from the above class are Defendant, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly own subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.

-25-

83.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

84.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

85.    **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands purchasers in the class.  Inasmuch as the class members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of class members can be ascertained.  Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

86.    **Commonality and Predominance (Federal Rule of Civil Procedure 23(a)(2)** – There are questions of law and fact common to the Class.  These questions predominate over any questions affecting only individual class members.  These common legal and factual issues include, but are not limited to:

    a.  Whether Hyundai engaged in the conduct alleged herein;

    b.  Whether Hyundai designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

    c.  Whether Hyundai caused the Blue Link Telematics System to be permanently disabled in vehicles whose owners did not subscribe to the Blue Link service;

    d.  Whether Hyundai was responsible for the phone number in Hyundai vehicles' telematics hardware being turned off;

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

e.  Whether Hyundai knew or should have known that the defects that existed with regard to the Hyundai Blue Link Telematics System would lead to the permanent disabling of that system in the Class Vehicles;

f.  Whether Hyundai knew or reasonably should have known of the Hyundai Blue Link Telematics System defects in the Class Vehicles before it sold or leased them to Class members;

g.  Whether Hyundai misrepresented to purchasers of its Blue Link equipped vehicles that the Blue Link service could be reactivated at a later time for a nominal fee;

h.  Whether Hyundai required the owners of Hyundai vehicles in which the Blue Link Telematics System hardware had been permanently disabled to pay for the replacement of such hardware in order to reactivate the Blue Link subscription service;

i.  Whether Hyundai breached the express terms of its contracts with purchasers when it included the Blue Link Telematics System as a standard feature on its automobiles at the time of sale but later caused such Blue Link Telematics Systems to be rendered permanently inoperable;

j.  Whether Hyundai breached the covenant of good faith and fair dealing by including the Blue Link Telematics System as a standard feature on its automobiles at the time of sale but later causing such Blue Link Telematics Systems to be rendered permanently inoperable;

k.  Whether Hyundai willfully concealed from purchasers of its Blue Link Telematics System equipped vehicles that the telematics hardware would be permanently disabled if they failed to enroll in the Blue Link subscription service;

l.  Whether Hyundai breached its express warranties by including the Blue Link Telematics System as a standard feature on its automobiles at the

time of sale but later causing such Blue Link Telematics Systems to be permanently disabled;

m. Whether Hyundai engaged in unfair, unlawful and/or fraudulent business practices under California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, by including the Blue Link Telematics System as a standard feature on the window stickers and in their advertisements at and before the time of sale but later causing such Blue Link Telematics Systems to be rendered permanently disabled;

n. Whether the same conduct violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*;

o. Whether Hyundai's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the members of the Class;

p. Whether Plaintiffs and the other Class members overpaid for their Class Vehicles as a result of the defects alleged herein;

q. Whether Hyundai was unjustly enriched by its deceptive practices;

r. Whether Plaintiffs and members of the class are entitled to equitable or injunctive relief and, if so, in what amount.

87.     **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – The claims of the representative Plaintiffs are typical of the claims of each member of the Class.  Plaintiffs, like all other members of the Class, have sustained damages arising from Defendant's violations of the laws, as alleged herein.  The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

88.     **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in

-28-

complex litigation and class action litigation.  There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate.  Counsel for the Class will vigorously assert the claims of all Class members.

89.  **Superiority (Federal Rule of Civil Procedure 23(b)(3))** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.  Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them.  Even if Class members themselves could afford such individual litigation, the court system could not.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

90.  The Class Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, the Class Plaintiffs would contemplate the use of additional media and/or mailings.

91.  This action is properly maintained as a Class Action pursuant to Rule 23(b)

First Amended Class Action Complaint
Case No.: 8:15-cv-00237-CJC-DFM

of the Federal Rules of Civil Procedure, in that:

     a.  Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

        i.    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

        ii.   Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

     b.  The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

     c.  Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

        i.    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

        ii.   The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

        iii.  The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

        iv.  The difficulties likely to be encountered in the management of a Class Action.

//

//

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

# V

## VIOLATIONS ALLEGED

92.     Plaintiffs allege the following violations on behalf of the Nationwide Class and all state-specific Classes, except where otherwise specifically noted.

## FIRST CAUSE OF ACTION

## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

93.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

94.     Plaintiffs and the class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

95.     Hyundai is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

96.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

97.     Title 15, United States Code, section 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

98.     Hyundai's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

99.     Hyundai breached these warranties as described in more detail above.  The Class Vehicles are equipped with the Blue Link Telematics System.  The Class Vehicles share a common defect in that they either have been permanently disabled or will be permanently disabled if the Blue Link subscription service is left inactive for more than one year.

100.   Plaintiffs and the other Class Members have had sufficient direct dealings with either Hyundai or its agents (dealerships and technical support) to establish privity

of contract between Hyundai, on one hand, and Plaintiffs and each of the other Class members on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Hyundai and its dealers, and specifically, of Hyundai's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

101.   Affording Hyundai a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.  Plaintiff Coss has already done so by contacting Hyundai after being told that his Blue Link Telematics System would be permanently if he did not reactivate his Blue Link subscription service and was told that his only choices were to pay for Blue Link subscription or have to replace the Blue Link Telematics System hardware at his own expense.  Indeed, it is Hyundai that is responsible for the permanent disabling of the Blue Link Telematics System in the first place.  At the time of sale or lease of each Class Vehicle, Hyundai knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Hyundai a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

102.   Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because Hyundai is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Class Vehicles by retaining them.

103.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000,

exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

104.  Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (California Business & Professions Code §§ 17200, *et seq.*)

105.  Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

106.  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

107.  Hyundai's unlawful, unfair, and fraudulent business acts and practices, as described throughout this FAC, was and is in violation of the UCL.  Hyundai's conduct violates the UCL in the following ways:

> i.  By knowingly and intentionally concealing from Plaintiffs and the other Class Members that the Blue Link Telematics System included as a "standard feature" of their vehicles would be permanently disabled if they did not maintain their enrollment in the Blue Link Subscription Service while obtaining money from Plaintiffs and the Class Members;

> ii.  By marketing the Blue Link Telematics System as being capable of being reactivated for a nominal fee if the Blue Link subscription service was allowed to lapse;

> iii.  By misrepresenting the reason that the Blue Link Telematics System hardware was permanently disabled;

-33-

iv. By refusing or otherwise failing to replace the permanently disabled Blue Link Telematics Systems;

v. By violating federal laws, including the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301;

vi. By violating other California laws, including California Civil Code §§ 1709, 1710, 1791.1, 1791.2, 1792, , and 1750, *et seq*., California Commercial Code § 2314;

vii. By violating the respective statutory consumer protection laws laws of each of the 50 States and the District of Columbia, as follows:

a. the Alabama Deceptive Trade Practices Act, Ala. Code 1975, § 8–19–1, *et seq.*;

b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

d. the Arkansas Deceptive Trade Practices Act, Ark. Code §§ 4-88-101, *et seq.*;

g. the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h. the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i. the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j. the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k. the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

-34-

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

l.   the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.   the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

n.   the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.   the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

p.   the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*

q.   the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

r.   the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

s.   the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.   the Louisiana Unfair Trade Practices and Consumer Protection Law, LSAR. S. 51:1401, *et seq.*;

u.   he Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.   he Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

w.   the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.   the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

y.   the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.   the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*

1                 aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407,

2                         *et seq.*;

3                 bb.     the Montana Unfair Trade Practices and Consumer

4                         Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et*

5                         *seq.*;

6                 cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-

7                         1601, *et seq.*;

8                 dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et*

9                         *seq.*

10               ee.     the New Hampshire Regulation of Business Practices for

11                       Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

12               ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

13               gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1,

14                       *et seq.*;

15               hh.     the New York Consumer Protection from Deceptive Acts

16                       and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

17               ii.     the North Carolina Unfair and Deceptive Trade Practices

18                       Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

19               jj.     the North Dakota Consumer Fraud Act, N.D. Cent.Code

20                       Chapter 51-15, *et seq.*;

21               kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et*

22                       *seq.*;

23               ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§

24                       751, *et seq.*;

25               mm.   the Oregon Unlawful Trade Practices Act, ORS 646.605, *et*

26                       *seq.*;

27               nn.     the Pennsylvania Unfair Trade Practices and Consumer

28                       Protection Law, 73 P.S. § 201-1, *et seq.*;

-36-

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

oo.   the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp.   the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

qq.   the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr.   the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

ss.   the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

tt.   the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu.   the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

vv.   the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

ww.   the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx.   the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

yy.   the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

zz.   the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

108.   Hyundai's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less

-37-

expensive alternative vehicles that did not contain an telematics system that would be permanently disabled if they did not maintain an enrollment in the telematics subscription service and which were not marketed as including such a system.

109.   Defendant's practice is also unfair since it has no utility and, even if it did, any utility is outweighed by the gravity of harm to Plaintiffs and the Class members. Defendant's practice is also immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweigh its benefits.

110.   Accordingly, Plaintiffs and the Class members have suffered injury in fact, including lost money or property as a result of Hyundai's actions, misrepresentations, and omissions.

111.   Plaintiffs seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Hyundai, under California Business and Professions Code § 17200.

112.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Hyundai from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money Hyundai acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business and Professions Code § 17203 and California Civil Code § 3345; and for such other relief set forth below.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (California Business & Professions Code §§ 17500, *et seq.*)

113.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

114.   California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner

-38-

or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

115. Hyundai caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, including statements on the vehicle Monroney sticker that the Blue Link Telematics System was included as a "standard feature" of their vehicles, and which were known, or which by the exercise of reasonable care should have been known to Hyundai, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

116. Hyundai has violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Class Vehicles as set forth in this FAC were material and likely to deceive a reasonable consumer.

117. Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Hyundai's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Hyundai with respect to the safety and reliability of the Class Vehicles. Hyundai's representations turned out not to be true because the Class Vehicles were distributed with Blue link Telematics Systems that Hyundai caused, and is causing, to be permanently disabled rendering certain safety, communication, navigational, and entertainment functions inoperative. Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

118. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Hyundai's business. Hyundai's wrongful conduct is part of a pattern or

First Amended Class Action Complaint
Case No.: 8:15-cv-00237-CJC-DFM

1  generalized course of conduct that is still perpetuated and repeated, both in the State of

2  California and nationwide.

3      119.   Plaintiffs, individually and on behalf of the other Class members, request

4  that this Court enter such orders or judgments as may be necessary to enjoin Hyundai

5  from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs

6  and the other Class members any money Hyundai acquired by unfair competition,

7  including restitution and/or restitutionary disgorgement, and for such other relief set forth

8  below.

9  **FOURTH CAUSE OF ACTION**

10  **Violation of California Consumer Legal Remedies Act**

11  **(Civil Code § 1750 *et seq.*)**

12      120.   Plaintiffs incorporate by reference all allegations of the preceding

13  paragraphs as though fully set forth herein.

14      121.   California's Consumers Legal Remedies Act ("CLRA"), California Civil

15  Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive

16  acts or practices undertaken by any person in a transaction intended to result or which

17  results in the sale or lease of goods or services to any consumer."

18      122.   The Class Vehicles are "goods" as defined in California Civil Code

19  § 1761(a).

20      123.   Plaintiffs and the other Class Members are "consumers" as defined in

21  California Civil Code § 1761(d), and Plaintiffs, the other Class Members, and Defendant

22  are "persons" as defined in California Civil Code § 1761(c).

23      124.   Plaintiffs' and each and every Class members' purchase or lease of the

24  subject vehicle constitute a "transaction" as defined by California Civil Code § 1761(e).

25      125.   As alleged above, Hyundai made numerous representations concerning the

26  benefits and safety features of the Blue Link Telematics System that were misleading.

27      126.   The acts and practices of Defendant as discussed throughout the FAC,

28  constitute "unfair or deceptive acts or practices" by Defendant, that are unlawful, as

-40-

enumerated in section 1770(a) of the California Civil Code, specifically in at least the following CLRA provisions:

    i.  Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

    ii.  Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

    iii.  Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

    iv.  Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

127.   Plaintiffs and the other Class members have suffered injury in fact and actual damages resulting from Hyundai's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Class Vehicles.

128.   Hyundai knew, should have known, or was reckless in not knowing that its Blue Link Telematics System hardware was susceptible to being rendered permanently disabled and, as such, were not were not suitable for their intended use.

129.   The facts concealed and omitted by Hyundai to Plaintiffs and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.  Had Plaintiffs and the other Class members known about the defective nature of the Class Vehicles and their Blue Link Telematics Systems, they would not have purchased or leased the Class Vehicles or would not have paid the prices they paid in fact.

130.   Such misconduct materially affected the purchasing decisions of Plaintiffs and the members of the Classes.

131.   Plaintiffs' and the other California Class members' injuries were proximately caused by Hyundai's fraudulent and deceptive business practices.

-41-

1    132.   Plaintiffs seek restitution and injunctive relief pursuant to California Civil
2    Code § 1780.

3    133.   On or about January 26, 2015, Plaintiffs notified Defendant of the unlawful
4    acts and practices described above by written notice which contained a demand that
5    Defendant: (a) provide the hardware/reconnection update for a nominal amount as it
6    contracted to do; (b) reimburse those customers the renewal and reconnection fees and
7    costs for those who paid the fees and costs after Hyundai issued its threatening letters of
8    permanently disabling the feature; (c) reimburse those customers who's vehicles have
9    been devalued by the permanent disabling of the feature, as well as for any out-of-pocket
10   expenses, attorney fees and costs associated with this unlawful practice; (d) send
11   customers notification of this change in practice; (e) agree to permanently discontinue
12   this practice challenged; and (f) agree to pay reasonable attorney fees and costs.

13   134.   Pursuant to California Civil Code section 1782(b), Defendant was required
14   to respond to Plaintiffs' notice and demand letter within 30 days of its receipt by either
15   correcting, repairing, replacing, or rectifying the violation set forth in the notice and
16   demand or by agreeing to correct, repair, replace, or rectify the violation within a
17   reasonable time.  Defendant failed to respond to Plaintiffs' notice and demand.

18   135.   As a result of the California Civil Code section 1770 violations described
19   above, Plaintiffs and each and every member of the Class have suffered actual damages.

20   136.   Plaintiffs seek actual damages and restitution pursuant to California Civil
21   Code section 1780.  Furthermore, Defendant acted with oppression, fraud, and/or malice
22   in engaging in the California Civil Code section 1770 violations described above.  As a
23   result, Plaintiffs are entitled to punitive damages, pursuant to California Civil Code
24   section 1780.
25   //
26   //
27   //
28   //

-42-

**FIFTH CAUSE OF ACTION**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(California Commercial Code § 2314)**

137.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

138.   Hyundai is and was at all relevant times a merchant with respect to motor vehicles under California Commercial Code § 2104.

139.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

140.   These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles were defective in that they were equipped with Hyundai Blue Telematics Systems that have been, or will be, permanently disables if owners decline to enroll in the Blue Link subscription service, resulting in certain safety, communication, navigational and entertainment functions inoperative.

141.   Hyundai was fully aware of this issue, as evidenced by the fact that it alerted owners of the Class Vehicles that there Blue Link Telematics System would be permanently disabled if they did not enroll in the Blue Link subscription service.

142.   Plaintiffs and the other Class members have had sufficient direct dealings with either Hyundai or its agents (dealerships) to establish privity of contract between Plaintiffs and the other Class members.  Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Hyundai and its dealers; specifically, they are the intended beneficiaries of Hyundai's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required

-43-

1  because Plaintiffs' and the other Class members' Class Vehicles are dangerous
2  instrumentalities due to the aforementioned defects.

3      143.   As a direct and proximate result of Hyundai's breach of the warranties of
4  merchantability, Plaintiffs and the other Class members have been damaged in an amount
5  to be proven at trial.

**SIXTH CAUSE OF ACTION**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

8      144.   Plaintiffs incorporate by reference all allegations of the preceding
9  paragraphs as though fully set forth herein.

10     145.   To the extent Hyundai's limited remedies are deemed not to be warranties
11 under California's Commercial Code, Plaintiffs, individually and on behalf of the other
12 Class members, plead in the alternative under common law warranty and contract law.
13 Hyundai limited the remedies available to Plaintiffs and the other Class members to
14 repairs and adjustments needed to correct defects in materials or workmanship of any part
15 supplied by Hyundai and/or warranted the quality or nature of those services to Plaintiffs
16 and the other Class members.

17     146.   Hyundai breached this warranty or contract obligation by failing to repair or
18 replace the Class Vehicles' Blue Link Telematics Systems that have been, or will
19 become, permanently disabled.  Hyundai further breached its contractual obligation to
20 provide the Blue Link Telematics System as a standard feature on Plaintiffs' vehicles by
21 equipping Plaintiffs' vehicles with telematics systems that were subject to being
22 permanently disabled within the expected useful life of the vehicles.

23     147.   The material terms of the contract also included the implied covenant of
24 good faith and fair dealing, whereby Hyundai covenanted that they would, in good faith
25 and in the exercise of fair dealing, deal with Plaintiffs and each Class member fairly and
26 honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs'
27 and the Class members' rights and benefits under the contract.  To the extent that
28 Hyundai attempted to reserve discretion in implementing its obligations regarding the

-44-

Blue Link service as a standard feature included in his purchase of the vehicle, Plaintiffs reasonably did not expect that Hyundai would exercise any such discretion to subsequently render the Blue Link Telematics System hardware permanently inoperable or use the threat of rendering such hardware inoperable, thereby substantially diminishing the value of the vehicle, to force him to renew his subscription to the Blue Link service.

148.   Plaintiffs and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract

149.   Hyundai breached the contract and the implied covenant of good faith and fair dealing by, inter alia, equipping the Class Vehicles with Blue Link Telematics Systems that will become permanently disabled if owners do not enroll in the Blue Link Subscription service for more than one year, and by refusing to pay for the replacement of such systems.

150.   As a direct and proximate result of Hyundai's breach of contract or common law warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**SEVENTH CAUSE OF ACTION**

**FRAUD BY CONCEALMENT**

151.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

152.   The misrepresentations, nondisclosure, and/or concealment of material facts made by Hyundai to Plaintiffs and the members of the Class, as set forth above, were known, or through reasonable care should have been known, by Hyundai to be false and material and were intended by Hyundai to mislead Plaintiffs and the members of the Class.

153.   Hyundai had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed their Class Vehicles as safe.

Furthermore, Hyundai marketed the Class Vehicles as being equipped with the Hyundai Blue Link Telematics System.  Once Hyundai made representations to the public about safety, quality, functionality, and reliability, as well as about the Hyundai Blue Link Telematics System in particular, Hyundai was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

154.   In addition, Hyundai had a duty to disclose these omitted material facts because they were known and/or accessible only to Hyundai which has superior knowledge and access to the facts, and Hyundai knew they were not known to or reasonably discoverable by Plaintiffs and the other Class members.  These omitted facts were material because they directly impact the safety, quality, functionality, reliability, and value of the Class Vehicles.

155.   Hyundai actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the other Class members to purchase or lease Class Vehicles at a higher price for the Class Vehicles, which did not match the Class Vehicles' true value.

156.   Plaintiffs and the Class were unaware of these omitted material facts that were actively concealed and/or suppressed , in whole or in part, by Hyundai with the intent to induce Plaintiffs and the other Class members to purchase or lease the Class Vehicles at a higher price for the Class Vehicles, which did not match the Class Vehicles' true value.

157.   If Plaintiffs and other Class Members had known these material facts, they would not have acted as they did.  Plaintiffs' and the other Class members' actions were justified.  Hyundai was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class Members.

158.   As a result of the conduct of Hyundai, Plaintiffs and the Class members have been damaged.

159.   In addition to such damages, Plaintiffs seeks punitive or exemplary damages pursuant to California Civil Code § 3294 in that Hyundai engaged in "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."  Hyundai's conduct warrants as assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

160.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

161.   Hyundai had a duty to provide honest and accurate information to its customers so that customers could make informed decisions regarding the substantial purchase of automobiles.

162.   Hyundai specifically and expressly misrepresented material facts to Plaintiffs and Class members, as set forth above, including, but not limited to representations that the Blue Link Telematics System was a standard feature of the Class Vehicles and that if owners opted not to enroll in the Blue Link subscription service, they or subsequent owners could reactivate the Blue Link Telematics System for a nominal charge

163.   Hyundai knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer would be misled by these misrepresentations.

164.   Plaintiffs and the Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby.

//
//
//
//

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

**NINTH CAUSE OF ACTION**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR**

**BREACH OF EXPRESS WARRANTIES**

**(California Civil Code §§ 1791.2 and 1973.2(D))**

165.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

166.   Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

167.   The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

168.   Hyundai is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

169.   Plaintiffs and the other Class members bought/leased new motor vehicles manufactured by Hyundai.

170.   Hyundai made express warranties to Plaintiffs and the other Class members within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

171.   In its Limited Warranty and in advertisements, brochures, and through other statements in the media, Hyundai expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicles' Owner's Handbook and Warranty Information:

> HYUNDAI NEW VEHICLE LIMITED WARRANTY
>
> WHAT IS COVERED
>
> Repair or replacement of any component originally
>
> manufactured or installed by Hyundai Motor Company, Hyundai
>
> Motor Group, Hyundai Motor Manufacturing Alabama
>
> (HMMA), Kia Motors Manufacturing Georgia (KMMG) or

Hyundai Motor America (HMA) that is found to be in defective
material or workmanship under normal use and maintenance,
except any item specifically referred to in the section "What is
Not Covered." . . . Repairs will be made using new Hyundai
Genuine Parts or Hyundai authorized manufactured parts.

WARRANTY PERIOD

The warranty period is limited to 5 years from the date of
original retail delivery or date of first use, or 60.000 miles,
whichever occurs first.

172.   In addition to the Limited Warranty, Hyundai through its advertisements and the Blue Link User's Manual, warranted several attributes and qualities, including that

Blue Link is a dynamic, telematics technology that allows
Hyundai vehicles to send—and receive—important and useful
information.  The system uses an enhanced cellular network,
with automatic roaming, that optimizes connections and
prioritizes emergency requests.  In your vehicle, Blue Link uses
voice-response technology, with the addition of a live
assistance team for your selected needs.

With Blue Link you get . . .

- Automatic emergency assistance, in the unfortunate event
  of a collision
- The convenience of point-of-interest search and
  navigation assistance, as well as the ability to remotely
  operate various vehicle features
- The peace of mind of self-diagnostic vehicle reports, and
  more . . .

173.   As set forth above in detail, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' Blue Link Telematics Systems in that they are permanently disabled if the Blue Link subscription service is inactive for more than one year.  This defect was and continues to be covered by Hyundai's express warranties, and these defects substantially impair the use, value, and safety of Hyundai's Class Vehicles to reasonable consumers like Plaintiffs and the other Class members.

174.   Plaintiff Coss and other Class members contacted Hyundai in response to being informed that their Blue Link Telematics System would be permanently disabled if they were left inactive for more than one year and were told that there only choice was to enroll in the Blue Link subscription service to have to replace the Blue Link Telematics System at their own expense if they wished to reactivate the Blue Link subscription service at some point in the future.

175.   Hyundai and its authorized repair facilities failed and continue to fail to repair the Class Vehicles to match Hyundai's written warranties after a reasonable number of opportunities to do so.

176.   Hyundai and its authorized repair facilities refuse to replace the permanently disabled Blue Link Telematics Systems.

177.   Hyundai did not promptly replace or buy back the Class Vehicles of Plaintiffs and the other Class members.

178.   As a result of Hyundai's breach of its express warranties, Plaintiffs and the other Class members received goods whose dangerous condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Hyundai's products, the products' malfunctioning, or by being forced to pay for the Blue Link subscription service, that they would not otherwise have subscribed to, for the sole purpose of preventing Hyundai from permanently disabling the Blue Link Telematics Systems installed on their vehicles.

179.   Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

180.   Pursuant to California Civil Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

**TENTH CAUSE OF ACTION**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(California Civil Code §§ 1791.1 and 1792)**

181.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

182.   Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

183.   The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

184.   Hyundai is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

185.   Hyundai impliedly warranted to Plaintiffs and the other Class members that its Class Vehicles were "merchantable" within the meaning of California Civil Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

186.   Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

(1)     Pass without objection in the trade under the contract description.

(2)     Are fit for the ordinary purposes for which such goods are used.

(3)     Are adequately contained, packaged, and labeled.

(4)     Conform to the promises or affirmations of fact made on the container or label.

187.   The Class Vehicles would not pass without objection in the automotive trade because of the defects in the Class Vehicle's Blue Telematics System that cause it to become permanently disabled.

188.   Because of the defects in the Class Vehicles' Blue Link Telematics System that cause it to become permanently disabled, they are not safe to drive and thus not fit for ordinary purposes.

189.   The Class Vehicles are not adequately labeled because the labeling fails to disclose the defects in the Class Vehicles' Blue Link Telematics System that cause certain crucial safety, communication, navigational, and entertainment functions of the Class Vehicles to become permanently disabled.

190.   Hyundai breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing defects associated with the Blue Link Telematics System.  Furthermore, these defects have caused Plaintiffs and the other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

191.   As a direct and proximate result of Hyundai's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Hyundai's products and the products' malfunctioning.

192.   Pursuant to California Civil Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

193.   Pursuant to California Civil Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## ELEVENTH CAUSE OF ACTION
## DECEIT
### (California Civil Code § 1710)

194.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

195.   Based on Hyundai's conduct as set forth above, Hyundai has engaged in fraud and deceit, as set forth in California Civil Code § 1710, in that Hyundai represented that the Blue Link Telematics System was a standard feature on the Class Vehicles when, in fact, Hyundai knew or should have known that such Blue Link Telematics Systems would be rendered permanently disabled if the owners of the Class Vehicles allow declined to enroll in the Blue Link subscription service for more than one year.

196.   Plaintiffs and the Class members have reasonably relied on the material misrepresentations and omissions made by Defendant and have been damaged thereby.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT,
### (Mich. Comp. Laws §445.901, *et seq*.)
### On Behalf of the Michigan Class

197.   Plaintiff Goldstein and the Michigan Class incorporate by reference the previous allegations as if fully set forth herein.

198.   At all times relevant to this suit, Hyundai was conducting trade or commerce as defined under Michigan Compiled Laws ("MCL") 445.902(1)(g), which is also known as the Michigan Consumer Protection Act ("MCPA").

199.   A party to a transaction covered under the MCPA must provide the other party the promised benefits of the transaction.

200.   Michigan courts, and federal courts applying Michigan law, have held that implied warranties contain a "promised benefit" that the product is fit for its intended and foreseeable use.

201.   The nature of the Class Vehicles failed to provide the Michigan Plaintiff and the other Michigan Class members the promised benefits of the implied warranties.

202.   Hyundai has committed unfair and deceptive acts by knowingly placing into the stream of commerce Class Vehicles that do not conform to Hyundai's representations or advertisements regarding the Class Vehicles being equipped with the Hyundai Blue Link Telematics System as a standard feature.

203.   Hyundai committed these and other unfair and deceptive acts with regard to the marketing and sale and/or lease of its Class Vehicles.  For instance, Hyundai made representations and/or public statements about the Hyundai Blue Link Telematics System of the Class Vehicles, which are unfair and deceptive in violation of Michigan law.

204.   Hyundai knew, should have known, or was reckless in not knowing that its Blue Link Telematics System hardware was susceptible to being rendered permanently disabled and, as such, were not were not suitable for their intended use.

205.   The facts concealed and omitted by Hyundai to Plaintiff Goldstein and and the other Michigan Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.  Had Plaintiff Goldstein and the other Michigan Class members known about the defective nature of the Class Vehicles and their Blue Link Telematics Systems, they would not have purchased or leased the Class Vehicles or would not have paid the prices they paid in fact.

206.   Such concealment and/or failure to warn constitutes an unfair, unconscionable, or deceptive act or practice within the meaning of the MCPA.

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

207.   Based upon all of these allegations, Hyundai violated MCL §445.903(d), (p), and (s), as well as other sections of MCL §445.903 to be developed during the course of discovery.

208.   The unfair, unconscionable, and deceptive acts committed by Hyundai caused damages to the Plaintiff Goldstein and the Michigan Class members.

209.   Hyundai is liable to the Plaintiff Goldstein and the Michigan Class members under the MCPA for damages for breaching their implied warranties and for the aforesaid unfair, unconscionable, and deceptive acts.

210.   Plaintiff Goldstein and members of the Michigan Class are entitled to compensatory damages, injunctive/equitable relief, and attorneys' fees under the MCPA.

211.   The allegations made by Plaintiff Goldstein and members of the Michigan Class meet the requirements of MCL §445.911(11)(3) because Hyundai's acts and/or practices violate MCL §445.903, have been declared unlawful by an appellate court of the state which is either officially reported or made available for public dissemination in accordance with the MCPA, and/or have been declared by a circuit court and/or the United States Supreme Court to constitute unfair or deceptive acts under the specified standards set forth by the FTC.

### THIRTEENTH CAUSE OF ACTION

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

### (Washington Revised Code § 19.86.010, *et seq.*,)

### On Behalf of the Washington Class

212.   Plaintiff Coss and the Washington Class hereby incorporate by reference the previous allegations as if fully set forth herein.

213.   Hyundai is a "person" within the meaning of the Washington Consumer Protection Act ("WCPA"), WRC § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the WCPA, WRC § 19.86.010(2).

214.   Plaintiff Coss and members of the Washington Class are "persons" within the meaning of the WPCA, WRC § 19.86.010(1).

-55-

215.   Hyundai's actions are unfair and/or deceptive within the meaning of the WCPA in that they falsely advertised the Class Vehicles as being equipped with Hyundai Blue Link Telematics Systems as a standard feature, when Hyundai knew, should have known, or was reckless in not knowing that its Blue Link Telematics System hardware was susceptible to being rendered permanently disabled and, as such, were not were not suitable for their intended use, as described throughout this Complaint.  Such false advertisements were material to Plaintiff Coss and the Washington Class members in purchasing and/or leasing the Vehicles.

216.   Hyundai's unfair or deceptive acts or practices have occurred in their trade or business, and Hyundai was and is capable of deceiving a substantial portion of the public.  Plaintiff Coss and the Washington Class members relied on the false advertisements and were, thereby, induced into purchasing and/or leasing the Class Vehicles and paying a higher price for the Class Vehicles.

217.   Hyundai's general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

218.   As a direct and proximate result of Hyundai's actions described above, the Washington Plaintiffs and the Class members have been injured in fact and suffered damages, and seek relief in the form of actual damages, treble damages, and reasonable attorneys' fees, pursuant to WRC § 19.86.090.

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(Nevada Revised Statute § 41.600, *et seq*.,)**

**On Behalf of the Nevada Class**

219.   Plaintiff Somers and the Nevada Class hereby incorporate by reference the previous allegations as if fully set forth herein.

220.   Nevada Revised Statute § 41.600 creates a cause of action for individuals injured by the use of deceptive trade practices as defined by N.R.S. § 598.0915.

Specifically, N.R.S. § 598.0915 states, in relevant part, that a person engages in a "deceptive trade practice" if, in the course of his business or occupation, he:

> (5)     Knowingly makes false representation as to the characteristics, ingredients, uses, benefits, alterations or qualities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;

> (7)     Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or show knows or should know that they are of another standard, quality, grade, style or model; or

> (15)   Knowingly makes any other false representation in a transaction.

221.   Nevada Revised Statute § 41.600 also creates a cause of action for individuals injured by the use of deceptive trade practices as defined by N.R.S. § 598.0923, which states, in relevant part, that a person engages in a "deceptive trade practice" when in the course of his business or occupation he knowingly . . . 2. Fails to disclose a material fact in connection with the sale or lease of goods or services.

222.   Hyundai has committed deceptive trade practices based on the conduct as set forth herein.

223.   Plaintiff Coss and the members of the Nevada Class relied on the material statements and representations by Hyundai, and as a result suffered damages.

224.   As a result, Defendant seeks damages, equitable relief, costs and reasonable attorneys fees, pursuant to N.R.S. § 41.600(3) (a-c).

//

//

//

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

# FIFTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (Kansas Statute § 50-623, *et seq*.)
### On Behalf of the Kansas Class

225.   Plaintiff Smiley and the Kansas Class hereby incorporate by reference the previous allegations as if fully set forth herein.

226.   In pertinent part, the Kansas Consumer Protection Act, K.S.A. § 50-626 provides:  "No supplier shall engage in any deceptive act or practice in connection with a consumer transaction[.]"

227.   In pertinent part, the Kansas Consumer Protection Act, K.S.A. § 50-627 provides:  "No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction."

228.   Hyundai is a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business solicits, engages in or enforces consumer transactions, and is therefore a "supplier" as defined in K.S.A. § 50-624(l).

229.   Plaintiff Smiley and the members of the Kansas Class are individuals, husbands and wives, sole proprietors, or family partnerships who seek or acquire property or services for personal, family, household, or business purposes, and are therefore "consumers" as defined in K.S.A. §50-624(b).

230.   The purchase of a Class Vehicle from Hyundai constitutes a "consumer transaction" pursuant to the definition provided in K.S.A. § 50-624(c).

231.   The Kansas Consumer Protection Act, K.S.A. § 50-634 provides for a private right of action for "a consumer who is aggrieved by a violation of this act."

232.   Hyundai violated K.S.A. § 50-626 by engaging in deceptive acts and practices in connection with a consumer transaction, as set forth herein.

233.   To their detriment, Plaintiff Smiley and the members of the Kansas Class relied on the above statements and omissions by Hyundai when deciding to purchase the Class Vehicles, and were harmed by Hyundai's conduct in ensuring that Plaintiff Smiley

and the Kansas Class would be unable to receive a material benefit from the transaction, specifically relating to the Blue Link Telematics System.

234.   As a direct and proximate result of Hyundai's deceptive and unconscionable acts and practices, Plaintiff Smiley and the Class were aggrieved and have suffered an ascertainable loss and seek damages, restitution, equitable relief, costs of suit, and attorney's fees.

235.   Plaintiffs are entitled to an award of punitive damages because Defendant willfully and intentionally violated K.S.A. §§ 50-626 and 50-627.

236.   Plaintiffs are entitled to an award of attorney's fees pursuant to K.S.A. § 50-634.

**SIXTEENTH CAUSE OF ACTION**

**VIOLATIONS OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**

**(Rhode Island General Laws § 6-13.1-1, *et seq*.,)**

**On Behalf of the Rhode Island Class**

237.   Plaintiff Thibert and the Rhode Island Class hereby incorporate by reference the previous allegations as if fully set forth herein.

238.   In pertinent part, the Rhode Island Unfair Trade Practices and Consumer Protection Act declares that: "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." R.I. Gen. Laws § 6-13.1-2.

239.   Plaintiff Thibert is a "persons," as defined in R.I. Gen. Laws § 6-13.1-1(3), and may represent other persons similarly situated, pursuant to R.I. Gen. Laws § 6-13.1-5.2.

240.   The purchase of a Class Vehicle from Hyundai constitutes "trade" and "commerce," pursuant to R.I. Gen. Laws § 6-13.1-1(5).

241.   "Unfair methods of competition and unfair or deceptive acts or practices, as set forth in R.I. Gen. Laws § 6-13.1-1(6), include:

(ii)    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

. . .

(v)    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

. . .

(vii)  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

. . .

(ix)    Advertising goods or services with intent not to sell them as advertised;

. . .

(xiii)  Engaging in any act or practice that is unfair or deceptive to the consumer; and

. . .

(xiv)  Using any other methods, acts, or practices that mislead or deceive members of the public in a material respect.

242.   Hyundai violated this statute by engaging in the practices complained of herein regarding the sale of the Class Vehicles.

243.   To his detriment, Plaintiff Thibert relied on the above statements and omissions by Hyundai when deciding to purchase the Class Vehicle, and Plaintiff Thibert and the Rhode Island Class were harmed by Hyundai's conduct in ensuring that Plaintiff

Thibert and the Nevada Class would be unable to receive a material benefit from the transaction, specifically relating to the Blue Link Telematics System.

244.   As a direct and proximate result of Hyundai's deceptive and unconscionable acts and practices, Plaintiff Thibert and the Nevada Class were aggrieved and have suffered an ascertainable loss and seek damages, punitive damages, restitution, equitable relief, costs of suit, and attorney's fees.  The Act specifically provides that individuals may recover "actual damages or two hundred dollars ($200), whichever is greater" and "[t]he court may, in its discretion, award punitive damages and may provide other equitable relief that it deems necessary or proper."  R.I.G.L. § 6-13.1-5.2.  With respect to class actions, the Act further provides that "the court may in its discretion order, in addition to damages, injunctive or other equitable relief."  R.I.G.L. § 6-13.1-5.2(b).  In both individual actions and class actions, the Act provides that "the court may award, in addition to the relief provided in this section, reasonable attorney's fees and costs."  R.I.G.L. § 6-13.1-5.2(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Nationwide Class and all state-specific Classes, demands judgment against and general and special relief from Defendant as follows:

1.    An order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiffs and their counsel of record to represent the defined Class;

2.    An order enjoining Defendant under California Business and Professions Code §§ 17203 and 17535, California Civil Code §§ 1780 and 1781, and the other laws as set forth herein:

   a. To reimburse and provide restitution to those customers the renewal and reconnection fees and costs for those who paid the fees and costs after Hyundai issued its threatening letters of permanently disabling the feature; reimburse those customers who's vehicles have been devalued by the

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

permanent disabling of the feature, as well as for any out-of-pocket expenses as a result of the practice declared by this Court to be an unlawful, fraudulent, or an unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition;

b. To disgorge all profits and compensation improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition; and

c. To cease engaging in false advertising and to disseminate an informational campaign to correct its misrepresentations and material omissions.

3.     Injunctive relief in the form of providing the hardware/reconnection update for a nominal amount as it contracted to do and cease its practice challenged herein;

4.     For damages under the causes of action for violation of California's Consumer Legal Remedies Act, fraud, negligent misrepresentation, breach of express warranty, breach of implied warranty, beach of contract and/or the covenant of good faith and fair dealing, statutory deceit; the Kansas Consumer Protection Act; the Michigan Consumer Protection Act, the Washington Consumer Protection Act; the Nevada Deceptive Trade Practices Act; and the Rhode Island Unfair Trade Practices and Consumer Protection Act;

5.     For punitive damages, pursuant to California Civil Code §§ 3294 and 1780(a)(4), Kansas Statute §§ 50-626 and 50-627, and Rhode Island General Laws § 6-13.1-5.2, and for treble damages, pursuant to Washington Revised Code § 19.86.090;

7.     For reasonable attorney's fees and costs, pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), Washington Revised Code § 19.86.090, Michigan Comp. Laws § 445.911(2), Nevada Revised Statute § 41.600(3) (a-c), Kansas Statute § 50-634, Rhode Island General Laws § 6-13.1-5.2(d), and other statutes as may be applicable;

7.     For prejudgment interest to the extent allowed by law;

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM

8.    For costs of suit incurred herein; and

9.    For such other and further relief as the Court deems appropriate.

DATED:  March 11, 2015.                    **MᴄCᴜɴᴇWʀɪɢʜᴛ, LLP**

BY:   /s/ Richard D. McCune
Richard D. McCune
Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a jury trial for all claims so triable.

DATED:  March 11, 2015.                    **MᴄCᴜɴᴇWʀɪɢʜᴛ, LLP**

BY:   /s/ Richard D. McCune
Richard D. McCune
Attorney for Plaintiffs

First Amended Class Action Complaint
Case No.:  8:15-cv-00237-CJC-DFM