JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

GUY COSS, et al.,

        Plaintiffs,

  v.

HYUNDAI MOTOR AMERICA,

        Defendant.

Case No.: SACV 15-00237-CJC(DFMx)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs Guy Coss, Serafin Montenegro, Ken Smiley, Steven Thibert, Mitchell Goldstein, and Terry Somers (collectively, "Plaintiffs") bring this putative consumer protection class action against Hyundai Motor America ("Hyundai"), alleging that

Hyundai threatened to unlawfully disable the Hyundai Blue Link Telematic System for Hyundai owners who did not renew or subscribe to the Hyundai Blue Link Service.  (*See* Dkt. No. 9 [First Amended Complaint ("FAC")].)  Plaintiffs filed the FAC on March 11.  (*Id.*)  On May 4, Hyundai filed motions to dismiss the FAC and to strike the class allegations from the FAC.  (Dkt. Nos. 17; 18.)  Because those motions substantially relied on extrinsic evidence, the Court converted them to a motion for summary judgment on June 11 and ordered supplemental briefing.  (Dkt. No. 29.)  Now before the Court is Hyundai's converted motion for summary judgment.  (Dkt. No. 31.)  For the following reasons, the Court GRANTS Hyundai's motion.

## II. BACKGROUND

In 2012 or 2013, each of the Plaintiffs purchased a Hyundai automobile equipped with Hyundai's Blue Link Telematics System—technology that facilitates roadside assistance and remote diagnostics.  (FAC ¶¶ 1; 10–20.)  The Blue Link Telematics System is a computer installed in the vehicle (the "Blue Link System") that is activated if a driver has an active subscription for the Hyundai Blue Link Service ("Blue Link Service"), which provides services to the driver wirelessly through the installed Blue Link System.  (Dkt. No. 17-1; Exh. C at 2 [the "2012 Terms and Conditions"]; Exh. D at 2 [the "2013 Terms and Conditions"].)  Drivers who wish to subscribe to the Blue Link Service pay a subscription fee and agree to the Hyundai Blue Link Agreement Terms and Conditions ("Terms and Conditions"), which govern the provision of the Blue Link Service.  Those Terms and Conditions provide, among other things, that Hyundai may stop providing the Blue Link Service at any time, with no obligation to resume service, and that Hyundai disclaims any warranties relating to the Blue Link System and the Blue Link Service.  *Id*.  The parties do not dispute that each Plaintiff at one point subscribed to the Blue Link Service and agreed to either the 2012 or 2013 versions of the Terms and Conditions.  (Dkt. No. 31-1 at 11.)

In early 2015, Hyundai allegedly began sending letters to vehicle owners whose subscriptions to the Blue Link Service had lapsed. The letters explained that if the owners did not renew their subscriptions to the Blue Link Service, their Blue Link Systems (*i.e.*, the units actually installed in their vehicles) would become permanently disabled and would cost a minimum of $500 to replace. (FAC ¶ 72.) The letter went on to explain that Blue Link Systems have phone numbers associated with them, and that because the owners' Blue Link Services had been inactive for more than a year, Hyundai intended to turn off the hardware and return the phone numbers to the carrier. (*Id.* ¶ 54.)

Currently, it is undisputed that none of the Plaintiffs have had their Blue Link Systems deactivated by Hyundai. (Dkt. No. 30-1; Exhs. F–J; Dkt. No. 31-5 ¶ 23.) One of the Plaintiffs—Guy Coss ("Plaintiff Coss" or "Coss")—renewed his subscription in response to Hyundai's 2015 letter. (Dkt. No. 31-5 ¶ 23.) Plaintiff Coss alleges that he would not have renewed the subscription had Hyundai not threatened to disable his vehicle's Blue Link System. (FAC ¶ 56.) Additionally, all of the Plaintiffs allege that their vehicles have been devalued by Hyundai's (yet-to-be-enforced) policy of disabling dormant Blue Link Systems. (*Id.* ¶ 6.) Plaintiffs bring sixteen different causes of action for various warranty, fraud, and statutory claims. (*Id.* ¶¶ 93–244.) Plaintiffs also bring class action allegations and seek to certify a nationwide class, or in the alternative, statewide classes. (*Id.* ¶¶ 80–91.)

## III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be

evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

**IV. ANALYSIS**

An Article III federal court must determine whether a plaintiff has standing, or whether she has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy that requirement, a plaintiff must prove: (1) that the plaintiff suffered an "injury in fact," *i.e.*, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury in fact is traceable to the defendant's actions; and (3) that the injury likely can be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Only the first requirement—that a plaintiff suffer an "injury in fact"—is at issue here.

Plaintiffs argue that they have shown two different types of injuries in fact. First, they allege that Plaintiff Coss paid to renew his subscription to the Blue Link Service in order to avoid the disabling of his vehicle's Blue Link System. Because Coss spent money he would not have spent absent Hyundai's letter, Plaintiffs argue, he has alleged an economic injury in fact. Hyundai responds that Coss's renewal of the Blue Link System cannot possibly be an injury in fact because Coss received exactly what he bargained for—a one-year subscription—and paid no more than the normal annual subscription fee (in other words, Hyundai did not demand a special reactivation fee). Because "[t]here can be no serious dispute that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury-in-fact," *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014), Hyundai is correct, and Plaintiffs lack standing to pursue this action.

Shortly after Plaintiff Coss's purchase of his Hyundai vehicle, he signed up for a 90-day free trial of the Blue Link Service. (Dkt. No. 31-5 ¶ 23.) It is undisputed that in order to sign up for that free trial, Plaintiff Coss agreed to the Terms and Conditions. (Dkt. 31-1 at 11.) The Terms and Conditions provide, in part,

> "[Hyundai] can decide to cease providing the Hyundai Blue Link Service to you at any time and for any reason, even for reasons unrelated to you or your account with us. . . . You do not have any right to have Hyundai Blue Link Service reactivated . . . Whether to allow you to have Hyundai Blue Link Service again is entirely up to us."

(2012 Terms and Conditions at 3; 2013 Terms and Conditions at 3.) The Terms and Conditions go on to disclaim any warranties relating to the Blue Link Service or Blue Link System:

"**NO WARRANTIES.** . . . HYUNDAI BLUE LINK HEREBY EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES

> OF ANY KIND, EXPRESS OR IMPLIED, ABOUT THE HYUNDAI BLUE LINK SYSTEM [AND] THE HYUNDAI BLUE LINK SERVICE."[1]

(2012 Terms and Conditions at 5; 2013 Terms and Conditions at 5.) Finally, the Terms and Conditions provide that if Hyundai chose to cease providing the Blue Link Service, Hyundai would "refund any amounts you have paid in advance for the Hyundai Blue Link Service . . . but not for the Hyundai Blue Link System." (2012 Terms and Conditions at 3; 2013 Terms and Conditions at 3.)

Plaintiff Coss claims that by reactivating his subscription to the Blue Link Service in order to stave off Hyundai's potential disabling of his unit, he suffered an injury in fact. But Coss agreed, when he initially signed the Terms and Conditions, that Hyundai could stop providing the Blue Link Service to him at any time and refuse to renew his subscription—which would nullify any utility of the Blue Link System. Moreover, Coss

---

[1] Plaintiffs argue at length that the Terms and Conditions are insufficient to disclaim coverage of the Blue Link System by Hyundai's Limited Warranty, which covers "any component originally manufactured or installed by [Hyundai] that is found to be defective in material or workmanship under normal use and maintenance." (Dkt. No. 17.1; Exh. A at 18.) This argument fails for two reasons. First, California law permits post-warranty disclaimers and modifications provided there is a "clear agreement between the parties" as to the disclaimer. *Hauter v. Zogarts*, 14 Cal. 3d 104, 119 (1975). Here, it is undisputed that each of the Plaintiffs agreed to either the 2012 or 2013 Terms and Conditions, which prominently disclaimed any warranty coverage of the Blue Link System. (Dkt. No. 31-1 at 11.) This clear agreement between the parties renders the disclaimer valid. Plaintiffs object that "[a] unilateral nonwarranty cannot be tacked onto a contract containing a warranty," *Klein v. Asgrow Seed Co.*, 246 Cal. App. 2d 87, 97 (1966). But, of course, the Terms and Conditions are not unilateral; both parties agreed to them. Second, Plaintiffs do not even allege any defective material or workmanship that would be covered under the Limited Warranty, were it to apply. Plaintiffs' theory of liability is that Hyundai will soon disable dormant Blue Link Systems, not that those systems are somehow defective. Each of the Plaintiffs has a properly working Blue Link System. And the Plaintiffs' pointing to a 2015 website printout, which suggests that Blue Link equipment is covered by the Limited Warranty, is similarly unavailing. Assuming, without deciding, that the website printout is admissible for the purposes of a summary judgment motion, it does not raise a disputed issue of material fact as to whether Hyundai made similar statements in 2012 or 2013, nor does it suggest that these Plaintiffs saw or relied on similar statements. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010) ("California law does not permit Plaintiffs, in the absence of specific allegations that they were aware of statements made in a national advertising campaign, to base their express warranty claims on statements made in that . . . campaign.").

1  agreed that if Hyundai did refuse to provide the Blue Link Service (and therefore render
2  his Blue Link System worthless), it need not reimburse him for the cost of the Blue Link
3  System—which is exactly the remedy he seeks here. (2012 Terms & Conditions at 3;
4  2013 Terms and Conditions at 3.) Put differently, Coss has already bargained away the
5  injury in fact he is attempting to assert. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961
6  (9th Cir. 2009) (holding that plaintiffs lacked standing because "[t]hey have not alleged
7  that they were deprived of an agreed-upon benefit in purchasing [the relevant product]").
8  Any "legally protected interest," *Lujan*, 504 U.S. at 558, Coss may have had in a
9  warrantied Blue Link System was extinguished when he agreed to the Terms and
10 Conditions. As a result, Plaintiff Coss cannot establish an injury in fact sufficient to
11 satisfy Article III's case and controversy requirement.

13       Plaintiffs' other theory of standing is that each of the Plaintiffs has standing to
14 pursue this case because Hyundai's threatened disabling of a standard feature in the
15 vehicles they purchased means that they overpaid for those vehicles, or that the vehicles
16 have become devalued. Plaintiffs are correct that devaluation or overpayment may, at
17 least in some cases, be sufficient to assert constitutional standing. *See*, *e.g.*, *In re Toyota
18 Motor Corp. Unintended Acceleration Mktg.*, 754 F. Supp. 2d 1145, 1162 (C.D. Cal.
19 2010) ("In principle, the Court agrees . . . that overpayment, loss in value, or loss of
20 usefulness is sufficient to confer standing."); *but see Lee*, 992 F. Supp. 2d at 973
21 (characterizing the *In re Toyota* holding as only permitting "claims of 'diminished value'
22 and 'overpayment' . . . to proceed for those plaintiffs who had pled 'something more'"
23 than mere overpayment or devaluation). But this is not one of those cases, because like
24 Coss, each of the Plaintiffs here already bargained away any potential devaluation from
25 Hyundai's disabling of the Blue Link System. By agreeing to the Terms and Conditions,
26 each of the Plaintiffs agreed that Hyundai could terminate, and refuse to reactivate, the
27 Blue Link Service—and render the Blue Link System worthless—at any point in time,

and for any reason.[2]  Accordingly, they may not contend that Hyundai's decision to do what Plaintiffs contractually permitted it to do somehow "devalues" their vehicles. Presumably, a competent valuation of Plaintiffs' vehicles would take into account the fact that Hyundai had reserved its right to cancel, or refuse to reactivate, the Blue Link Service.  Plaintiffs' devaluation or overpayment theory is therefore insufficient to confer Article III standing.  Hyundai's motion for summary judgment is GRANTED.

## V. CONCLUSION

For the foregoing reasons, Hyundai's converted motion for summary judgment is GRANTED.

DATED: August 31, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[2]  Plaintiffs make much of the fact that the Terms and Conditions refer to Hyundai's right to cancel the Blue Link *Service*, not disable the Blue Link *System*. But those are two sides of the same coin, since the Blue Link System equipment does not function without an active subscription to the Blue Link Service. Plaintiffs offer the Court no reason to believe that a Blue Link System which has been disabled by Hyundai has any different effect on the vehicle's value than that of a Blue Link System which Hyundai—according to its rights under the Terms and Conditions—refuses to activate a Blue Link Service subscription for.